In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.

Bankruptcy Nos. 86 B 11270 (BRL) Through 86 B 11334 (BRL) 86 B 11402 (BRL) and 86 B 11464 (BRL).

United States Bankruptcy Court, S.D. New York.

March 6, 1990.

As Amended March 7, 1990.

See also, Bkrtcy., 109 B.R. 51.

Levin & Weintraub & Crames, New York City by Herbert S. Edelman, Steven E. Fox, Craig I. Lustig, Skadden, Arps, Slate, Meagher & Flom, New York City by Bert L. Wolff, Gary E. Crawford, for debtors.

Kramer, Levin, Nessen, Kamin & Frankel, New York City by Paula A. Schmeck, for LTV Bank Group.

Morgan, Lewis & Bockius, New York City by Charles B. Manuel, Jr., Christine McInerney, for Postal Dispatcher Claimants.

Offermann, Mahoney, Cassano, Pigott, Greco, Palmer & Whalen, Buffalo, N.Y. by Camille P. Wicher, for claimant Joseph Dotterweich.

Paul William Beltz, P.C., Buffalo, N.Y. by Kevin J. Sullivan, for claimants Seufert, Willis and MacNeil.

Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa. by Katherine Mezzanotte, for claimant Robert Rodgers.

Wells, Wells, Marble & Hurst, Jackson, Miss. by J. Jerry Langford, Charles P. Quarterman, for claimant Sarah Lancaster.

Anapol, Schwartz, Weiss & Schwartz, P.C., Philadelphia, Pa. by Sol H. Weiss, Alan Starker, for claimant Donna Tozer, Admx.

George M. Riecan & Associates, Inc., P.S., Tacoma, Wash. by George M. Riecan, for claimants Angeline.

Michael R. Panter & Associates, Chicago, Ill. by Michael R. Panter, for claimants Carol.

Cathey & Strain, Cornelia, Ga. by Dennis T. Cathey, for claimant Dollar.

Heller & Owen, Encino, Cal. by Stephen H. Heller for claimants Paul.

Grissom, Crow, Richards & Featherston, Inc., Houston, Tex. by Carl Crow, for claimants Pierre.

Law Offices of Dan G. Ryan, Concord, Cal. by Dan G. Ryan, for claimants Amaral Concord Gateway I.

## MEMORANDUM DECISION ON BANKRUPTCY COURT'S JURISDICTION TO HEAR AND DETERMINE WHETHER CERTAIN PERSONAL INJURY TORT OR WRONGFUL DEATH CLAIMS ARE SUSTAINABLE AT LAW

BURTON R. LIFLAND, Chief Judge.

Bankruptcy courts are often called upon to allow or disallow claims in the context of motions to expunge claims based upon, *inter alia:* an applicable bar date in the bankruptcy proceeding; an applicable statute of limitations; *res judicata;* payment; release; discharge in bankruptcy; or some other basis which tends, if established, to negate the existence of a claim against a debtor. However, in light of the 1984 Amendments to the Bankruptcy Code, the question as to whether a bankruptcy court has jurisdiction to make this threshold determination with respect to a claim to recover for a personal injury tort or wrongful death, appears to be an issue of first impression. Specifically, the narrow issue to be addressed herein is whether this Court has subject matter jurisdiction to make a threshold determination for allowance or disallowance of (1) personal injury tort or wrongful death claims which may have been asserted against an inappropriate (wrong) defendant or debtor and (2) personal injury tort or wrongful death claims because they may be barred, as a matter of law, by the government contractor defense established in *Boyle v. United Technolo-*

*gies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

## BACKGROUND

On September 19, 1983 (the "Acquisition Date"), pursuant to a stock purchase agreement dated July 24, 1983, Nakoma Corporation, an indirect subsidiary of LTV Corporation ("LTV"), acquired all of the capital stock of AM General Corporation ("AM General"), a wholly owned subsidiary of American Motors Corporation ("AMC"). On September 21, 1983, Nakoma Corporation transferred the stock of AM General to LTV Aerospace and Defense Company ("LTVAD"). Since September 21, 1983, AM General has been a wholly owned subsidiary of LTVAD.

On July 17, 1986 (the "Filing Date") and thereafter, LTV, LTVAD, AM General and their affiliates each filed a petition for reorganization under chapter 11 of the Bankruptcy Code (the "Code"), and have continued in the management and possession of their businesses and assets as debtors-in-possession pursuant to §§ 1107 and 1108 of the Code. No trustee or examiner has been appointed herein.

On October 6, 1989, LTV, LTVAD and AM General on behalf of themselves and the other debtors and debtors-in-possession (collectively, the "Debtors") filed their objection (the "Objection") to 32 claims (the "Claims") which allege, *inter alia,* that the damages to the claimant or the claimant's decedent (the "Claimants") resulted from an occurrence involving an AM General designed and manufactured motor vehicle known as the "Postal Dispatcher".[1] Each of the Claims is based upon the allegedly defective design of the Postal Dispatcher and failure to warn of risks associated with the allegedly defective design. The Claims sound in breach of warranty (i.e., contract law), negligence, strict tort liability, or other state law theories of recovery. Although the merits of the Debtors' Objec-

tion are not currently before this Court, in order to fully understand the jurisdictional question at issue, it is important to summarize the substance of the Objection.

Debtors assert that AM General designed, manufactured and sold over 100,-000 of these vehicles to the United States Post Office and its successor, the United States Postal Service (collectively, the "Post Office") to be employed as mail delivery vehicles, pursuant to contracts with the United States government. The Debtors further allege that AM General did not sell any Postal Dispatchers to any of the Claimants referred to herein. It is also alleged that LTV and LTVAD did not design, manufacture, or sell the Postal Dispatchers, and are not proper parties against whom claims involving the Postal Dispatchers can be asserted. Moreover, the Debtors state that LTV never held any ownership interest in AM General, and that LTVAD did not acquire any ownership interest prior to the production of some units of the last model of the Postal Dispatchers manufactured by AM General. Debtors assert that LTVAD as owner of the stock of AM General was not involved in the design, manufacture, or sale of any Postal Dispatchers. Finally, the Debtors argue that as a result of recent case law recognizing the "government contractor defense," including the decision of the Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), a government contractor cannot be held liable for defective design or failure to provide warnings, when the product was manufactured in accordance with reasonably precise specifications approved by the government[2]. Debtors assert that the Post Office and the United States Government approved reasonably precise specifications with regard to the Postal Dispatchers, which conformed to those specifications. The Debtors also contend that the manufacturers of the Postal Dispatchers

---

1. The LTV Bank Group has joined in the Debtors' request for the entry of an order disallowing these Claims.

2. It should be noted that a recent Second Circuit decision involving the government contractor

defense as it applies to a "failure to warn" scenario, thoroughly reviews the *Boyle* decision in the context of cross-motions for summary judgment. *See, Grispo v. Eagle–Picher Industries, Inc.,* 397 F.2d 630 (2d Cir.1990).

did not know of any risks in the use of the vehicle that were not known to the Post Office and the United States Government.

Based on the aforementioned assertions, the Debtors request that with respect to LTV and LTVAD, the Claims be disallowed entirely, and with respect to all of the Debtors (including AM General), the Claims be disallowed to the extent they allege that the Postal Dispatcher was defectively designed or that Debtors are liable for failure to warn of the risks associated with the design. The Debtors state that if this Court rules in their favor and declares that bankruptcy courts do have jurisdiction to make a threshold determination to allow or disallow personal injury or wrongful death claims, the Debtors would be prepared to file a Motion for Summary Judgment on their Objection to Claims.

In contrast, the Claimants assert that, although they would need further discovery on the issue, the government contractor defense is not applicable under these circumstances. Moreover, they also assert that with discovery as to the particulars of LTV's and LTVAD's acquisition of AM General, LTV and/or LTVAD could be held liable as a successor to AM General.

### ISSUE

Whether this Court has subject matter jurisdiction to make a threshold determination as to whether or not there exists a legal theory or bases to sustain a claim sounding in personal injury tort or wrongful death, as opposed to "liquidating" or "estimating" that claim for the purpose of distribution in a case under title 11.

---

**3.** Pursuant to the "Standing Order of Referral of Case to Bankruptcy Judges," dated July 10, 1984, the Hon. Robert J. Ward, United States District Judge, for the United States District Court for the Southern District of New York, has referred all cases commenced under title 11 to the bankruptcy judges of this district to the maximum extent permitted by 28 U.S.C. § 157(a).

**4.** Section 157(b)(3) provides that "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether

### DISCUSSION

With the passage of a new Bankruptcy Code in 1978, Congress vested the United States district courts with original and exclusive jurisdiction of all cases commenced under title 11. 28 U.S.C. § 1471(a) (repealed, 1984). The district courts also had original but not exclusive jurisdiction over all civil proceedings arising under title 11 or arising in or related to cases pending, under title 11. 28 U.S.C. § 1471(b) (repealed, 1984). Section 1471(c) (repealed, 1984) conferred upon the bankruptcy courts within the district where the title 11 case was pending all of the jurisdiction granted to the district court under 28 U.S.C. § 1471(a).

The scope of the jurisdiction accorded the bankruptcy courts under the newly enacted Code met with constitutional challenges in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.* (*"Marathon"*), 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, the Supreme Court held that the jurisdiction conferred upon the bankruptcy courts by Congress under 28 U.S.C. § 1471(c) was too broad and, therefore, unconstitutional. *Id.* at 87, 102 S.Ct. at 2880. In response to the Supreme Court's ruling, Congress enacted the 1984 Amendments to the Code (the "1984 Amendments") which, pursuant to 28 U.S.C. § 1334, jurisdiction of all bankruptcy-related cases and proceedings is now vested originally in the district courts. The district courts are, in turn, authorized under 28 U.S.C. § 157(a) to refer to bankruptcy judges "any or all cases under title 11 or arising in or related to a case under title 11...."[3]

■ Under the 1984 Amendments, all proceedings in the bankruptcy case are categorized as either "core" or "non-core".[4]

a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). This determination "is binding, subject only to conventional appellate review." *In re Lion Capital Group*, 48 B.R. 329, 338 (S.D.N.Y.1985).

Pursuant to 157(b)(1), bankruptcy judges are granted the authority to hear and determine all

The employment of this terminology by Congress is in recognition of *Marathon's* holding that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights...." *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871; *see also, In re Baldwin–United Corp.*, 48 B.R. 49, 53 (Bankr. S.D.Ohio 1985).

Section 157(b)(2)(B) expressly provides that all proceedings involving the "allowance or disallowance of claims against the estate" are within the "core" jurisdiction of the bankruptcy court. 28 U.S.C. 157(b)(2)(B). Specifically, § 157(b)(2)(B) provides that "core" proceedings include:

> (B) *allowance or disallowance of claims against the estate* or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

28 U.S.C. § 157(b)(2)(B) (emphasis added).

■ The legal predicates for Debtors' Objection are § 502 of the Code and Bankruptcy Rule 3007. It is well established that the filing of an objection to claims pursuant to Bankruptcy Rule 3007 seeking the disallowance of the claims initiates a contested matter which is a "core proceeding" within the purview of 28 U.S.C. § 157(b)(2)(B). *See, e.g., In re Manville Forest Products Corporation*, 896 F.2d 1384, 1388–89, 1390 (2d Cir.1990); *In re Meyertach Corp.*, 831 F.2d 410, 417–18 (3rd Cir.1987); *In re L.B. Trucking, Inc.*, 90

B.R. 81 (Bankr. D.Del.1988), *aff'd*, 100 B.R. 711 (D.Del.1989); *In re Shelby County Healthcare Services of AL, Inc.*, 80 B.R. 555 (Bankr. N.D.Ga.1987); *In re BKW Systems, Inc.*, 66 B.R. 546 (Bankr. D.N.H. 1986); *In re Wood*, 52 B.R. 513 (Bankr. N.D.Ala.1985); *In re Lion Capital Group*, 46 B.R. 850, 860 (Bankr. S.D.N.Y.), *aff'd*, 48 B.R. 329 (S.D.N.Y.1985); *In re Nanodata Computer Corp.*, 52 B.R. 334, 340 (Bankr.W.D.N.Y.1985), *aff'd*, 74 B.R. 766 (W.D.N.Y.1987); *In re Vic Snyder, Inc.*, 50 B.R. 631, 633 (Bankr.E.D.Pa.1985); *see also, Katchen v. Landy*, 382 U.S. 323, 329–30, 86 S.Ct. 467, 472–73, 15 L.Ed.2d 391 (1966); *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984) (holding that objections to claims are "core" proceedings under the Emergency Rule, which was initially enacted in response to *Marathon*, and subsequently incorporated in substance in the 1984 Amendments).

■ Indeed, it is beyond dispute that this Court does have jurisdiction to "allow", "disallow", "liquidate" or "estimate" certain aspects of the Claims which assert causes of action based in part on alleged breaches of warranty and are therefore based on contract law[5]. The Objection to these warranty claims is clearly a "core" proceeding and unquestionably outside the jurisdictional limitations imposed by § 157(b)(2)(B) in the case of personal injury tort or wrongful death claims. The same is true with respect to Claims for property damage and for Claims based on statutory causes of action.

The 1984 Amendments' classification of an objection to claims proceeding as a "core" matter is merely a continuation of

---

"core" proceedings and to enter dispositive orders and judgments in connection therewith, subject to appellate review by a district court under 28 U.S.C. § 158(a). In contrast, in "non-core" proceedings the bankruptcy judge is authorized only to conduct a hearing on such proceedings and to submit proposed findings of fact and conclusions of law to the district court for final disposition which are subject to *de novo* review by the district court, unless the parties consent to a final determination thereof by the bankruptcy judge. *See, In re Outlet Dept.*

*Stores, Inc.*, 82 B.R. 694, 695 (Bankr.S.D.N.Y. 1988).

5. *See*, 28 U.S.C. § 157(b)(2)(B), *supra*, and § 157(b)(2)(O) which states as follows:

> (2) Core proceedings include, but are not limited to—
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

the same system for claims resolution that has existed for decades. Although the terminology has changed, the concepts remain fundamentally the same. Under the former Bankruptcy Act of 1898 (the "Act"), a core-type proceeding was commonly known as a "summary proceeding". In addressing the nature of a proceeding involving the allowance of or objections to claims under the Act, the Supreme Court held in *Katchen v. Landy, supra:*

> [T]his Court has long recognized that a chief purpose of the bankruptcy law is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period...." and that provision for summary disposition, "without regard to usual modes of trial attended by some necessary delay," is one of the means chosen by Congress to effectuate that purpose....
>
> *It is equally clear that the expressly granted power to "allow," "disallow" and "reconsider" claims which is of 'basic importance in the administration of a bankruptcy estate' is to be exercised in summary proceedings and not by slower and more expensive processes of plenary suit....* This power to allow or disallow claims includes "full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based. This is essential to the performance of the duties imposed on it." ... The Trustee [or debtor-in-possession] is enjoined to examine all claims and to present his objections, ... and "[w]hen objections are made, [the court] is duty bound to pass on them." ... "The whole process of proof, allowance and distribution is shortly speaking, an adjudication of interest claimed in res, ..." and thus falls within the principle quoted above that bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property within their possession. Further, the Act itself directs that "[o]bjections to claims shall be heard and determined as soon as the convenience of the court and the best interest of the

estates and the claimants will permit." ... and a committee report indicate that the provision means that "[o]bjections shall be heard and determined in a summary way."

*Katchen v. Landy*, 382 U.S. at 328–30, 86 S.Ct. at 472–73 (citations omitted) (emphasis added).

▉ The cases are clear that a bankruptcy court may not hear proceedings to liquidate or estimate personal injury tort or wrongful death claims for the purpose of determining the distribution payable to such claimants. *In re Waterman S.S. Corp.*, 63 B.R. 435, 436 (Bankr.S.D.N.Y. 1986); *In re UNR Industries, Inc.*, 45 B.R. 322, 324–25 (N.D.Ill.1984). However, the estimation of such claims by a bankruptcy court for other purposes, such as determining the feasibility of a debtor's plan of reorganization, is permissible and constitutes a "core" proceeding. *See, e.g., A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Johns–Manville Corp.*, 45 B.R. 823, 825–26 (S.D.N.Y.1984); *In re UNR Industries, Inc.*, 45 B.R. at 326–27; *In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 532 (Bankr.N.D.Ala.1986). For example, the district court in *Manville* stated as follows:

> Even assuming that Section 157(b)(5) requires that all personal injury and wrongful death claims be tried in the district courts.... Section 157(b)(2)(B) does not exclude from the definition of core proceedings estimations of personal injury and wrongful death claims for all purposes. The section is limited to estimation "for purposes of distribution." This leaves estimation for other purposes within the jurisdiction of the bankruptcy court.

*In re Johns–Manville Corp.*, 45 B.R. at 826. The court reasoned that there is no justification for committing the already overtaxed resources of the federal judiciary by trying personal injury and wrongful death claims if it becomes reasonably apparent from such an estimation the debtor cannot propound a feasible plan. *Id.* at 830. Thus, there is clear authority in this

district, as well as several others, that the jurisdictional restriction in § 157(b)(2)(B) should be read narrowly.

The recent Second Circuit case, *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir. 1990) also supports finding a narrow jurisdictional restriction. In *Ben Cooper*, the court found that in the context of § 157(b)(2)(A) "[t]he statements of several influential legislators ... indicate that bankruptcy jurisdiction was to be construed as broadly as possible within the constitutional constraints of *Marathon*." *In re Ben Cooper, Inc.*, at 1398. Moreover, the Second Circuit agreeing with the First Circuit's analysis of the legislative history of § 157 stated as follows:

> "the legislative history of [§ 157] indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings. *See* 130 Cong. Rec. E1108–1110 (daily ed. March 20, 1984) (statement of Representative Kastenmeier); *id.* at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness).

*In re Ben Cooper, Inc.*, at 1398 (quoting *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987)).

Based upon a narrow reading of § 157(b)(2)(B) and the broad jurisdictional mandate enunciated above, Debtors contend that § 157(b)(2)(B) clearly distinguishes between proceedings seeking the "allowance or disallowance" of claims, which constitute "core" matters, and proceedings seeking the "liquidation or estimation" of personal injury tort or wrongful death claims for purposes of distribution, which constitute "non-core" matters. Consequently, Debtors urge this Court to hold that bankruptcy courts do have subject matter jurisdiction to disallow legally disabled personal injury tort and wrongful death claims in the first instance.

In contrast, the Claimants assert that the Debtors analysis completely ignores the Congressional intent of enacting 28 U.S.C.

§ 157, the holding in *Marathon, supra*, and the clear constitutional prohibition against bankruptcy courts trying and otherwise disposing of personal injury and wrongful death claims. Thus, the Claimants argue that "[i]f the bankruptcy courts do not have authority to try personal injury and wrongful death cases, then surely they do not have the authority to dispose of such cases summarily by 'objection' or summary judgment motion." (Memorandum of Law of Paul William Beltz, P.C. at 3). The Claimants urge this Court to find that the Objection is "a 'non-core' proceeding on disputed factual issues on which the injured parties have a constitutional right to jury trial either in the district court or in the courts where the actions are pending." (Claimants' Memorandum of Law Establishing Bankruptcy Court's Lack Of Jurisdiction at 6). They further assert that "[t]he Objection does not seek to liquidate or estimate these claims for purposes other than for distribution, but to render them valueless for all purposes, in direct violation of the jurisdictional limitation of 28 U.S.C. section 157, subdivisions (b)(2)(B), (b)(2)(O) and (b)(5) and Claimants' right to jury trial under the Seventh Amendment and 28 U.S.C. section 1411." *Id.*

This Court agrees with the Debtors' analysis that the resolution of the Objection, which is predicated on the applicability, as a matter of law, of the civil immunity afforded by the government contractor defense enunciated by the Supreme Court in *Boyle*, goes to the "allowance or disallowance of claims" and, therefore, is a "core" matter within the jurisdiction of this Court. Additionally, a determination as to whether the Claims are being asserted against the appropriate Debtor entity is likewise a "core" proceeding within this Court's jurisdiction.

Section 157(b)(2)(B)'s conferring of jurisdiction over proceedings involving the allowance or disallowance of claims to the bankruptcy courts can be read in harmony with the Code's coextensive proscription against a bankruptcy court's liquidation or estimation of personal injury tort or wrongful death claims. Although § 157(b)(2)(B)

restricts a bankruptcy court's power to liquidate or estimate personal injury tort or wrongful death claims for purposes of distribution, it imposes no corollary restriction upon a bankruptcy court's ability to *disallow* such claims in the first instance if they are not sustainable at law. Allowing or disallowing claims is clearly a separate and distinct function from liquidating or estimating that claim. Had Congress meant to deny any jurisdiction whatsoever to the bankruptcy court to disallow claims based on the mantra of personal injury tort or wrongful death, it could have said so; but it did not.

A segment of the scant legislative history of § 157(b)(2)(B) which is relevant to this issue, states as follows:

> When a claim is based on a contract, for example, of a party dealing with the debtor, the bankruptcy judge should enter final orders estimating those claims. There are good grounds, however, for requiring that *any final order estimating or liquidating personal injury tort* claims arising from automobile accidents, which are claims of parties who have not voluntarily involved themselves with the debtor, be entered by an Article III district judge. For that reason this provision exempts such claims from the definitions of "core proceedings." Although the bankruptcy judge will enter proposed findings of fact and conclusions of law, any final order will be entered by the district judge after the district judge has considered the bankruptcy judge's proposed findings and conclusions and after *de novo* review by the district judge of those matters to which a party has timely and specifically objected.

Congressional Record–Senate, S 7622 (daily ed. June 19, 1984), reprinted in 9 Bankr. Serv. (L.Ed.) 73 (Supp. Apr.1986) (Senator DeConcini) (emphasis added).

As the case of *In re Poole Funeral Chapel, Inc.*, 63 B.R. 527 (Bankr. N.D.Ala. 1986), acknowledges, "[t]here are several departures from the plain language of section 157(b)(2)(B) found in the legislative history of that section." *Id.* at 530. Clearly,

the term "estimating or liquidating" is identical to the language in the statute without any reference to a proscription on a bankruptcy court's jurisdiction to "allow or disallow" such claims. However, this passage also continues with language which is beyond the breadth of the statute as enacted by stating that "this provision exempts such claims from the definitions of 'core proceedings'." Finally, the passage also incorrectly indicates that a bankruptcy court would have jurisdiction to enter findings of fact and conclusions of law subject to *de novo* review by a district court[6]. However, as discussed more fully below, such a statement is in direct contradiction to the unambiguous statutory language of § 157(b)(5) which states "that personal injury tort and wrongful death claims be *tried* in the district court...." (emphasis added).

Mr. Justice Frankfurter's article *Some Reflections On The Reading Of Statutes* 47 COLUM. L.Rev. 527 (May 1947) offers guidance as to the weight which should be attributed to the legislative history in interpreting the statute at issue:

> Spurious use of legislative history must not swallow the legislation so as to give point to the quip that only when legislative history is doubtful do you go to the statute. While courts are no longer confined to the language, they are still confined by it.... In the end, language and external aids each accorded the authority deserved in the circumstances, must be weighed in the balance of judicial judgment.

*Id.* at 543.

■ Furthermore, "[w]hen, as here, it is not possible to reconcile the legislative history with the statute itself, the statute must prevail because its meaning is clear." *In re Poole Funeral Chapel, Inc.*, 63 B.R. at 532 (citing *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986)). In the absence of ambiguity, the plain meaning of the words employed by Congress in the 1984 Amendments generally governs the judicial interpretation of the statutory provision at issue. *See, Mills*

---

**6.** *See,* § 157(b)(1) and footnote No. 5, *supra.*

*Music, Inc. v. Snyder,* 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556, *reh'g denied,* 470 U.S. 1065, 105 S.Ct. 1782, 84 L.Ed.2d 841 (1985).

Consequently, the application of simple rules of grammar and statutory construction demonstrates that the exception created in § 157(b)(2)(B) for "liquidation or estimation of ... personal injury tort or wrongful death claims against the estate for purposes of distribution" modifies *only* the phrase "estimation of claims or interest" and not the phrase "allowance or disallowance of claims." Had the exception been meant to apply to the allowance or disallowance of claims, then a comma would have been inserted immediately before the words "but not." No such comma exists and, therefore, as an elementary matter of statutory and grammatical construction, the exception is inapplicable to the disallowance of claims. Had Congress meant to deprive bankruptcy courts of any jurisdiction to disallow personal injury tort or wrongful death claims § 157(b)(2)(B) would have read as follows:

> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11, *but not the allowance or disallowance, liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.*

A narrow interpretation of § 157(b)(2)(B) is also appropriate as a matter of judicial economy and administration. It is the duty of the courts to interpret the federal bankruptcy laws in a manner designed to effectuate the purposes underlying their enactment. *See, Royal Indem. Co. v. American Bond & Mortg. Co,* 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100 (1933). "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982); *see also,* 2A J. Singer, *Sutherland Statutory Construction,* § 45.12 (4th ed. 1984). It would clearly be an absurd result if a bankruptcy court was divested of jurisdiction to determine as a matter of law whether a legal basis exists for a claim. It is undeniable that certain affirmative defenses available to debtors go to the threshold issues of whether a legally cognizable claim exists against the debtor, entirely separate and distinct from questions going to the merits (*i.e.* the "liquidation or estimation") of such claims.

For example, if a personal injury tort or wrongful death claim were filed in these proceedings and the statute of limitations on those particular causes of action had expired prior to the filing of the chapter 11 cases, it would clearly be an absurd result in terms of judicial economy and practicality, if this Court were unable to disallow the claim on the basis of the statute of limitations issue without ever reaching issues of estimation or liquidation of that claim. An interpretation of § 157(b)(2)(B) which would remove this type of objection to claims from the jurisdiction of the bankruptcy court would be impractical and was clearly not what Congress intended by limiting a bankruptcy court's jurisdiction to hear and determine "liquidation or estimation of ... personal injury tort or wrongful death claims...." If a claim is not allowed because it is barred by the statute of limitations, there is undeniably no need for it to be liquidated or estimated. Moreover, compelling interests of judicial economy, as enunciated in *In re Johns–Manville Corp.,* 45 B.R. at 830, support a finding of jurisdiction in this instance.

Similarly, logic dictates that a bankruptcy court would not be deprived of jurisdiction to determine, whether, as a threshold matter, any claim, including a personal injury tort or wrongful death claim, is barred by (i) an applicable bar date for filing claims in the proceeding; (ii) *res judicata;* (iii) payment; (iv) release; (v) discharge in bankruptcy; or (vi) some other basis which tends, if established, to negate the existence of a claim. Simply because the underlying basis of the claim at issue sounds in personal injury tort or wrongful death does

*not* deprive the bankruptcy courts of jurisdiction to make an initial determination on issues that are only tangentially related to the actual physical event causing the personal injury tort or wrongful death aspect of the claim.

To the extent that it would preclude any jurisdiction whatsoever, this Court remains unpersuaded by the decision of the District Court for the Northern District of Illinois in *In re UNR Industries, Inc. ("UNR")*, 74 B.R. 146 (N.D.Ill.1987). In *UNR*, the debtors filed a series of individual objections (including motions for summary judgment) based on the government contractor defense to the allowance of certain asbestos-related personal injury claims. *Id.* at 147. The district court withdrew the reference without objection from the debtor. *Id.* Following the withdrawal, the district court addressed a personal injury claimant's motion to transfer venue of the debtors' claims objections to a different district under 28 U.S.C. § 157(b)(5), and in that context held, *inter alia*, that the debtors' objections to claims constituted "non-core" proceedings under 28 U.S.C. § 157(b)(2)(B) and, should be heard and finally decided by a district court. *Id.* at 148. This Court believes that the *UNR* case was wrongly decided by reason of the failure to consider the critical distinction in § 157(b)(2)(B) between the fundamental jurisdiction of bankruptcy courts over proceedings involving the allowance or disallowance of claims, including personal injury and wrongful death claims, versus the liquidation or estimation thereof for purpose of distributions. As discussed herein, the bankruptcy court must have jurisdiction to make the threshold determination of whether as a matter of law, a claim exists which can be asserted against the debtor, even if that claim sounds in personal injury tort or wrongful death.

Moreover, Claimants' reliance on the cases *In re Poole Funeral Chapel, Inc.*, 63 B.R. 527 (Bankr.N.D.Ala.1986) and *In re Boyer*, 93 B.R. 313 (Bankr.N.D.N.Y.1988), *appeal denied*, 1989 WL 5862 (N.D.N.Y. 1989), for the proposition that § 157(b)(2)(B) should be broadly construed is misplaced. The issue involved in those two cases was whether the cause of action involved was actually a "personal injury tort". The courts both acknowledging the lack of legislative history and the difficulty in reconciling what did exist with the statute itself, held that the *term* "personal injury tort" should be broadly construed. *In re Poole Funeral Chapel, Inc.* 63 B.R. at 530; *In re Boyer*, 93 B.R. at 318. In contrast, the law in this district is that Congress intended this exception for a "narrow range of claims" *In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y.1989); *see also, In re Vinci*, 108 B.R. 439, 441 (Bankr.S.D.N.Y.1989). Although, the Debtors are not disputing that aspects of the Claims here are "personal injury tort" or "wrongful death claims," the district court's interpretation further bolsters a narrow reading of § 157(b)(2)(B)'s jurisdictional limitation.

Moreover, the language of § 157(b)(5) of the Code also supports this Court's conclusion. § 157(b)(5) reads in pertinent part as follows:

> 5) The district court shall order that personal injury tort and wrongful death claims be *tried* in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, ...

(emphasis added). It cannot be disputed that "[t]he obvious purpose of the 1984 Amendments is to prevent bankruptcy courts from *trying* personal injury tort and wrongful death actions." *In re Poole Funeral Chapel, Inc.*, 63 B.R. at 532. (emphasis added). Indeed, the statute unequivocally states that the forum for *trying* a personal injury tort or wrongful death claim is limited to the district court. However, there is no such proscription for summarily disposing of claims which have no basis in law, for instance, pursuant to Rules 12(b)(6) or 56 of the Federal Rules of Civil Procedure (the "Federal Rules") where a trial would not be necessary. Thus, a finding that the claim is subject to disallowance as a matter of law is not tantamount to a determination on the merits of the personal injury tort or wrongful death claim. On the other hand, a threshold finding that the claim is sustainable as

a matter of law leaves it open for trial elsewhere for "liquidation or estimation" for purposes of distribution.

In further support of this Court's analysis is a decision of the United States Bankruptcy Appellate Panel of the Ninth Circuit in the case of *In re Aquaslide 'N' Dive Corp.* (*"Aquaslide"*), 85 B.R. 545 (9th Cir. B.A.P.1987), in which the debtor's objection to a personal injury claim was held to be a "core" proceeding. In *Aquaslide*, the bankruptcy court decided that there was no issue of fact regarding whether the slide in question had been manufactured by the debtor and held that it had not. Consequently, the bankruptcy court disallowed the claim as if the objection to claim had been the subject of a motion for summary judgment. The Ninth Circuit BAP upheld the bankruptcy court's decision stating that "here the trial court did not generally adjudicate the personal injury claim. It essentially estimated the claim against Aquaslide for purposes of confirming a plan under Chapter 11." *Id.* at 549. The Ninth Circuit BAP concluded that the bankruptcy court's action did not violate the tort claimant's right to a trial by jury.

Similarly, in this situation, the Debtors' Objection is a "core" proceeding. However, this Court believes that its jurisdictional mandate to determine the Objection goes beyond merely estimating these Claims for the purpose of confirming a plan although that may be the ultimate purpose of the entire claims adjudication process. A bankruptcy court has the right and duty to disallow claims as a threshold matter, if *no legal basis* for the claim exists against the debtor.

This Court is also not persuaded by Claimants' argument that the Supreme Court's holding in *Marathon, supra,* warrants a different result. The arguments made by Claimants in this regard are identical to the assertions dealt with and rejected by the Second Circuit in *In re Manville Forest Products Corp., supra.* The court stated as follows:

> While it is true that the instant adversary proceeding involved a pre-petition breach of contract claim, as in *Mara-*

*thon,* there is one crucial distinction which Gulf ignores. Unlike the defendant in *Marathon,* Gulf filed a proof of claim in M.F.P.'s Chapter 11 case. By filing a proof of claim, Gulf submitted itself to the equitable power of the bankruptcy court to disallow its claim. *Granfinanciera, S.A. v. Nordberg,* [—— U.S. ——] 109 S.Ct. 2782, 2799, n. 14 [106 L.Ed.2d 26] (1989).

*In re Manville Forest Products Corp.,* 896 F.2d at 1389. The case cited by the Claimants, *In re Wood,* 825 F.2d 90 (5th Cir. 1987), was also referred to by the Second Circuit, and further supports a finding that this case is distinguishable from *Marathon, supra.*

> "A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.* Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim."

*In re Manville Forest Products, Corp.,* at 1389–90 (quoting *In re Wood,* 825 F.2d at 97 (footnotes omitted) (emphasis added)). Similarly, in this instance, the Claimants have all filed proofs of claims in these proceedings and thus have submitted themselves to the jurisdiction of this Court for making appropriate legal determinations as to allowance or disallowance of their Claims as distinguished from a general adjudication (trial) of the causes of action presented in the underlying pending lawsuits.

Likewise, Claimants' assertion that its constitutional right to a jury trial precludes this Court from ever entertaining jurisdic-

**78**

tion of any aspect of Debtors' multifaceted Objection is not persuasive. Claimants' broad based argument has been tempered by the recent Second Circuit decision, *In re Ben Cooper, Inc., supra,* which, in light of the Supreme Court's holding in *Granfinanciera S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) that the Seventh Amendment right to jury trial exists even in core proceedings, holds that there are no statutory or constitutional bars which would preclude a bankruptcy court from conducting a jury trial *where applicable* in a core matter.

However, irrespective of whether or not a bankruptcy court is permitted to conduct jury trials, this Court has jurisdiction to allow or disallow the Claims as a matter of law. In order to prevail, on the Objection, Debtors have the burden of establishing in a summary judgment-type disposition that there are no genuine issues of material fact and that they are entitled to prevail as a matter of law[7]. This Court is not being called upon to determine damages based upon a finding of liability, but rather, simply that the Claims have no legal basis.

Assuming, *arguendo,* that the Debtors are unable to prevail on their motion for summary judgment because there exist genuine issues of material fact, the question of whether Claimants are entitled to a jury trial either here or in the district court will be determined by whether those material issues of fact have a tort nexus or contract (breach of warranty) nexus, and therefore, the discussion herein should in no way be understood as determinative on this issue.

### CONCLUSION

Based upon the aforementioned discussion, this Court holds that it does have subject matter jurisdiction to determine the threshold issues of whether or not: (1) the LTV and LTVAD assertions in the Objection that the claims against them must be disallowed because they had no involvement whatsoever in the design, manufacture, or sale of Postal Dispatchers, are valid; and (2) LTV, LTVAD, and AM General are entitled to immunity from civil liability under the government contractor defense enunciated by the Supreme Court in *Boyle, supra,* and, consequently, that as a matter of law, the Claims must be disallowed. However, this Court does not have jurisdiction to liquidate or estimate these Claims for purposes of distribution, if, as a threshold matter, it is determined that the Claims are sustainable as a matter of law.

It is so ORDERED.

---

[7]. *See,* Federal Rules 12(b)(6) and 56.