DEWAYNE HANSEN et al., Plaintiffs-Appellants, v. JIMMY DEMARAKIS, Defendant-Appellee.

First District (5th Division)    No. 1—92—4138

Opinion filed February 25, 1994.

Lello & Wittmeyer, Chartered, of Mount Prospect (Ronald F. Wittmeyer, Jr., of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Robert L. Reifenberg, and Melinda S. Kollross, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiffs Dewayne Hansen and Sharon Hansen brought an action to recover damages from defendant Jimmy Demarakis for personal injuries. They filed a three-count second amended complaint based on alleged violations of the Illinois Structural Work Act (740 ILCS 150/1 (West 1992) (count I), negligence (count II), and a claim for loss of consortium by Sharon Hansen (count III)). The trial court granted defendant's motion for summary judgment. This timely appeal followed. At issue is the propriety of the granting of summary judgment.

Plaintiff Dewayne Hansen rented an apartment at defendant's building located at 1718 West Northwest Highway, Arlington Heights, Illinois, beginning December 1, 1989. The apartment was one of seven units in a mixed-use commercial building owned by defendant. The building had a barber shop and restaurant/tavern on the ground floor. Defendant owned and operated the restaurant/ tavern which was known as "Jimmy D's." Defendant worked full time operating Jimmy D's and his real estate property. Defendant's employee, Joe Mayerck, performed janitorial duties at Jimmy D's, as well as most of the routine maintenance around defendant's building. On prior occasions, Joe Mayerck had assisted plaintiff in performing repairs at defendant's building, including a plumbing problem in plaintiff's apartment. Subsequently a plumber came and solved it. Defendant owned certain equipment, which he kept at the building for use by those performing maintenance and/or repairs at the building.

Plaintiff wanted to refurbish the rusted second-floor balcony that served his apartment. Prior to beginning the work on the balcony plaintiff discussed this idea with defendant. Defendant stated that it was all right with him if plaintiff performed the work. Although the entire railing could have been painted from inside the balcony itself, plaintiff chose to use a ladder instead. On the day before he planned to begin refurbishing the balcony, plaintiff asked defendant's employee, Joe Mayerck, whether defendant had a ladder that he could use to reach the second-floor balcony. Mayerck replied that defendant had only short ladders, so whenever he (Mayerck) needed a ladder at the building he used the ladder from the gas station next

door. The ladder belonged to the gas station owner and was kept outside the station lying against the west wall, which faced defendant's property. Mayerck had not asked the owner for permission to use the ladder nor had he asked the owner about the condition of the ladder. Mayerck had not inspected the ladder.

When Mayerck and plaintiff talked about the ladder at the gas station, the station was closed. Plaintiff said to Mayerck, "Well nobody's there." And Mayerck responded, "Well, just go ahead and take it anyway." Had the owner of the gas station been asked about that ladder, he would not have allowed anyone to make use of it, because he knew the ladder was old, rickety, and dangerous.

The following morning, May 27, 1990, plaintiff gathered a wire brush, paint, and the gas station's ladder at approximately 7:30 a.m., and began sanding and painting the balcony. Plaintiff understood that the ladder belonged to the gas station. The plaintiff's own inspection of the ladder persuaded him that it was safe to use. Plaintiff had been using the ladder for approximately an hour when the legs of the ladder broke off below the first step. The ladder fell sideways, causing the plaintiff to fall from the ladder to the ground, bending his left knee under him when he fell. Plaintiff was taken by ambulance to Northwest Community Hospital, where extensive emergency surgery was performed on his left knee. Plaintiff was found to have fractured his left tibia and also suffered a crushed artery in his left knee, for which a transplant was required. Plaintiff has been unable to return to work since the accident. Plaintiff did not inform Demarakis that he was going to paint the balcony on the particular date of the accident. Neither Demarakis nor Mayerck supervised the work. They were not on the premises at the time.

Plaintiff's appeal asks this court to reverse the judgment of the trial court, which granted defendant's motion for summary judgment on plaintiff's claims for violation of the Structural Work Act (740 ILCS 150/1 (West 1992)), negligence and loss of consortium.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992).) The court's task on such a motion is not to resolve a disputed factual question, but rather to determine whether one exists. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) In this case we must decide whether the trial court properly found insufficient evidence to raise a jury question as to (1) whether Jimmy Demarakis had charge of the work and (2) whether defendant breached a duty of care owed to plaintiff.

The Structural Work Act provides:

"All scaffolds, hoists, cranes, stays, ladders, supports, or other

mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." 740 ILCS 150/1 (West 1992).

■ Mere ownership is not enough to establish liability under the Act. (*Banwart v. Okesson* (1980), 83 Ill. App. 3d 222, 403 N.E.2d 1234.) Liability under the Structural Work Act may fall only upon an owner "having charge of" the work. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 514 N.E.2d 188.) The issue of who has charge of the work is usually for the jury to decide, but the issue is one of law if the undisputed facts permit only one conclusion. (*Fisher v. Crippen* (1986), 144 Ill. App. 3d 239, 493 N.E.2d 1204.) The supreme court of Illinois has determined that the term "having charge of" is "one of common usage and understanding and that further attempts at definition can only lead to confusion and error." (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 388, 385 N.E.2d 664.) However, it is clear that even if defendant had furnished equipment to plaintiff—and he did not—that alone would not put him in charge of the work. (See *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 265 N.E.2d 134.) Rather, a defendant must have some direct connection with the construction and alteration operations before he can be deemed to be in charge of the work, and thus subject to duty and liability under the Act. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) "By its terms the Act is a statute intended to protect only certain workers in a narrow occupation, one unusually hazardous by its very nature. *** It should not be extended by unnatural interpretations ***." *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 1028, 414 N.E.2d 147, 150.

■ Plaintiff argues that defendant was in charge of the phase of the work involving furnishing the ladder needed to reach the second-story balcony upon which plaintiff was to perform his work. Plaintiff claims defendant's maintenance man furnished the defective ladder to the plaintiff. Defendant's position is that he did not "have charge" of the work nor did he furnish plaintiff with a ladder. Rather, plaintiff intentionally took the ladder from a third party without obtaining permission.

Our reviewing courts have found that more direct connections with structural activities than those presented here did not place defendants "in charge of" the work for purposes of establishing liability under the Act. In *Daniel v. Weiss* (1974), 17 Ill. App. 3d 294, 308 N.E.2d 46, the reviewing court upheld an order granting defendant's motion for summary judgment. The defendant's connections with the work included the following: defendant owner contracted with plaintiff's employer to paint windows; defendant had a resident janitor who was at the building continuously; defendant checked the work progress from time to time; according to plaintiff's deposition, the janitor provided instructions regarding the work to be done; and the deposition of the janitor stated that he was to watch to see that the workers were painting the windows and that he let the painters into the building every day. The defendant did not "have charge of" the work; rather, he only exercised "the rights of ownership and the owner's rights under the contract." *Banwart*, 83 Ill. App. 3d at 226, 403 N.E.2d at 1237.

Similarly, in *Melvin v. Thompson* (1963), 39 Ill. App. 2d 413, 188 N.E.2d 497, summary judgment for the defendant owner was affirmed where: plaintiff was painting a sign on defendant's building; the owner provided detailed instructions regarding the work, the supplies to be used, and the time at which the work was to be completed; he provided a ladder; he inspected the equipment being used; and he instructed the workers where to move and that they were to scrape off the old paint and indicated various locations where insufficient paint was being used. Despite these connections the defendant was exercising the rights of ownership rather than taking charge of the work.

Plaintiff's reliance on *Lawler v. Pepper Construction Co.* (1961), 33 Ill. App. 2d 188, 178 N.E.2d 687, is misplaced. *Lawler* involved evidence from which the jury could have found that subcontractors who left their scaffold up knowing that other subcontractors would be following them on the jobsite in effect invited the other subcontractors to continue using it. *Lawler* did not consider the issue of a ladder or support which was brought to the jobsite by a plaintiff who took the ladder from another location without obtaining permission. Hence, we find *Lawler* inapplicable to this case.

Nor does *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, aid the plaintiff's cause. There the defendant owned and maintained a ladder that caused injury to an employee of a subcontractor who was performing repair work at one of defendant's power plants. The case at bar is distinguishable. In this case the ladder was owned by a third party. Moreover, the plaintiff was not

an employee of the defendant; rather, he was doing the work voluntarily.

*McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157, fails to support the plaintiff's theory that defendant's employee had exclusive control over the defective ladder. There the defendant had a ladder which it knew was hazardous in a locked room. The defendant promulgated a rule against using the ladder. Nonetheless, the defendant's employees enabled the plaintiff to use the ladder. In contrast, in the case at bar, the ladder was taken from a third party's property.

We must reject plaintiff's contention that *Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 534 N.E.2d 680, has any application here. There the defendant owned, maintained, and controlled the ladder used by the plaintiff. That is not this case.

The question whether defendant breached a duty of care owed to plaintiff need not detain us long. To properly state a cause of action for negligence, the plaintiff must establish that the defendant owed a duty of care, a breach of that duty, and an injury proximately caused by the breach. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.) Whether the duty of care exists is a question of law to be determined by the court and may be determined on a motion for summary judgment. (*Wojdyla*, 148 Ill. 2d at 421.) In the case at bar, defendant neither owned, maintained nor controlled the ladder used by plaintiff. Therefore, he did not owe him any duty of care. *Zukauskas*, 179 Ill. App. 3d 657, 534 N.E.2d 680.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY, P.J., and GORDON, J., concur.