**In re BARTO TECHNICAL SERVICES, INC., formerly known as Wean Incorporated, Debtor.**

**BARTO TECHNICAL SERVICES, INC., formerly known as Wean Incorporated, Movant,**

v.

**Dale A. CARR and Bonnie Carr, his wife, Respondents.**

**Bankruptcy No. 93–22540–JKF.**
**Motion No. RAF–20.**

United States Bankruptcy Court, W.D. Pennsylvania.

May 2, 1995.

David Ziegler and Rudy A. Fabian, Pittsburgh, PA, for debtor Barto Technical Services, Inc.

David W. Lampl, Pittsburgh, PA, for Official Committee of Unsecured Creditors of Barto Technical Services, Inc.

Samuel R. Grego, Springer, Bush and Perry, Pittsburgh, PA, for Dale A. and Bonnie Carr.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is Debtor's Objection to the Claim of Dale A. and Bonnie Carr (hereafter "Carr"). Prior to the filing of this bankruptcy, the Illinois state court denied Debtor's motion for summary judgment. Resolution of a claim dispute is a core matter under 28 U.S.C. § 157(b)(2)(B). In *In re Chateaugay Corp.*, 111 B.R. 67, 78 (Bankr.S.D.N.Y.1990), *aff'd* 146 B.R. 339 (S.D.N.Y.1992). The summary judgment standard of Fed.R.Civ.P. Rule 56(c) applies in bankruptcy cases. Fed.R.Bankr.P. 7056. Accordingly, we must find that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We conclude that a genuine dispute of material fact exists and an evidentiary hearing is therefore necessary. In accordance with Fed.R.Civ.P. 56(d), we shall designate material facts not subject to substantial controversy.[1]

## I. FACTS

Dale A. Carr was injured while operating a single block wire drawing machine designed and manufactured in 1948 by Vaughn Machinery Co., a predecessor of Debtor, for delivery to Universal Cyclops. Debtor is the sole successor to Vaughn. Subsequently, the machine was transferred to Techalloy, Inc., Carr's employer at the time of the accident.

On August 12, 1988, the Carrs filed a product liability action against Debtor in Cook County, Illinois. Mr. Carr alleged in the state court action that Debtor is liable to him for his injuries under two separate theories: negligent design and breach of the duty to warn.[2]

Carr's cause of action arose from injuries sustained in December of 1986 while working for Techalloy, Inc., in Union, Illinois. His duties included the operation of the wire drawing machine at issue. This machine rotates a vertical block which pulls stock rod through a die box, thereby reducing the size of the stock through one or more dies so as

---

**1.** We do not determine damages inasmuch as no evidence has been presented on this point. In addition, on June 3, 1994, pursuant to 28 U.S.C. § 157(b)(5), this court entered an order lifting the automatic stay to allow Carr to file a motion to determine venue in the District Court for the Western District of Pennsylvania. Subsequently, the District Court, in an order dated September 2, 1994, abstained in favor of the case pending in the state circuit court of McHenry County, Illinois. Thus, any issues to be resolved will be handled by the state court.

**2.** It is not disputed that Carr's strict product liability claim is barred by the Illinois statute of repose, 735 ILCS 5/13–213, amended 1995 Ill.Legis.Serv. P.A. 89–7 (H.B. 20) (West). The Illinois legislature, in amending the statute of repose, recognized the ease with which plaintiffs could circumvent the 12–year strict liability limitation period by asserting a negligence cause of action. The statute as amended provides that "no product liability action based on *any theory or doctrine* shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale...." *Id.* at § 13–213(b) (emphasis added). This amendment applies only to causes of action filed on or after its effective date and does not apply to Carr's claim.

Furthermore, Carr raised the question of duty to warn. Inasmuch as material disputes of fact exist with respect to the design issue, disposition of the duty to warn question must be postponed until trial.

to produce finished wire that meets the customer's specifications. The wire then connects to the block in such a manner that it begins to "climb" up the block as the block rotates. This point of contact is known as the "in-running nip-point."

On the day that Carr was injured, he was experiencing difficulty with the run of wire that he was attempting to feed through the machine and onto the block. The wire was "lacing", or crossing over itself, rather than "climbing" up the block properly. Carr consulted with a number of his co-workers about these difficulties, and they advised him to try soaping the wire as it exited the die and before it wrapped around the block. In conformity with this suggestion, Carr held a large block of industrial soap against the wire with his left hand. He stood to the right of the wire, which was stretched between the die and the block, and reached over the wire to hold the soap against its face as it exited the die. His gloved left hand became caught on the wire as it passed by the block, and he was pulled forward into the nip-point. Carr was drawn around the block which rotated at least once before the machine could be stopped by one of his co-workers. Carr suffered numerous injuries, including a broken neck and paralysis of his body.

It is not disputed that the machine was altered after its manufacture and delivery to Universal Cyclops, but prior to Carr's injuries, in the following material respects:

(1) The safety bar was disconnected. The safety bar's purpose was to stop the machine when the safety mechanism was activated "either by the operator intentionally leaning into it with his thigh, or in the event that the operator became caught on the wire and was pulled toward the block and into contact with the safety bar". Affidavit of E.B. Eichen-

laub, Jr., at ¶ 10 (hereafter "Eichenlaub Affidavit").[3]

(2) An "end out limit switch", intended to stop the machine automatically if a wire came loose and began to lash around, was also removed. Had the switch been in place, in the event that an operator was pulled toward the nip-point, the operator could pull or kick the switch and stop the machine.

(3) The "dynamic braking system" was altered. In the event that any of the safety devices were engaged, the purpose of the braking system was to bring the block to a stop within one tenth to one quarter of a revolution after the power was disconnected.[4]

At least three other modifications were made to the machine. First, it had been raised above the floor by approximately six or seven inches. Debtor contends that this modification reduced the distance between the operator and the nip-point. Second, an air duct had been installed to allow for air cooling of the block. This system replaced the water cooling system and occupied the space that previously housed the end-out limit switch. Finally, the originally designed block had been replaced. The diameter of the block in place on the night of Carr's accident was 27½ inches, not the 22 or 22½ inch block originally designed for the machine. Debtor asserts that this modification also reduced the distance from the operator to the nip-point.

## II. DISCUSSION

Debtor objects to Carr's claim on two bases: (1) its conduct in designing the machine was not a proximate cause of Carr's injuries; and (2) it did not breach its duty of care in designing the machine.

### A. Choice of Law

 Pennsylvania's choice of law rules provide that the substantive law to be ap-

---

**3.** Mr. Eichenlaub is Debtor's expert. He is a *professional engineer with considerable experience*, including service as the assistant chief engineer of the Vaughn Machinery company and chief engineer of the Vaughn division of Wean United, Inc.

**4.** In addition to the enumerated modifications to safety devices, Debtor alleges that the "snarl

switch", a device intended to stop the machine if the wire became tangled, also was disconnected. Carr, however, disputes this, stating that there is no evidence showing that the switch was disconnected. Whether or not the snarl switch was disconnected, and its import to this case, is a matter to be resolved at trial.

plied is that of the jurisdiction having the most significant relationship to the parties and the transaction. *Tiernan v. Devoe*, 923 F.2d 1024 (3d Cir.1991). In this case, Carr is an Illinois resident, the accident took place in Illinois, and Techalloy, Inc., is located in Illinois. Therefore, we conclude that Illinois has the most significant relationship to this matter, and its substantive law must be applied.

### 1. Legal Standard Under Illinois Law

■ In order to establish negligence under Illinois law, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the breach of the duty of care proximately caused the injury. *Hansen v. Demarakis*, 259 Ill.App.3d 166, 197 Ill.Dec. 78, 82, 630 N.E.2d 1202, 1206 (1 Dist., 1994).

The parties do not dispute that Debtor owed a duty of care when manufacturing the machine or that Carr suffered an injury while operating the machine. Debtor's first argument addresses probable cause, but we can not reach that issue prior to determining whether Debtor breached its duty of care in designing the machine.

### B. Standard Of Care

■ There can be no negligence liability in the absence of a breach of duty.

"[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk.

*Kay v. Ludwick*, 87 Ill.App.2d 114, 230 N.E.2d 494, 497 (1967).

■ In the present case, the pertinent inquiry as to the standard of care applicable to Debtor's design of the machine is whether Debtor "either failed to do something which a reasonably careful person would have done

or did something which a reasonably careful person would not have done." *Sparacino v. Andover Controls Corporation*, 227 Ill. App.3d 980, 169 Ill.Dec. 944, 949, 592 N.E.2d 431, 436 (1 Dist., 1992). Using Carr's theory of Debtor's breach of duty, Carr would have to demonstrate at trial, through expert testimony, *inter alia*, the inability of the originally designed safety features to prevent any injury to the operator of the machine. Debtor would have the opportunity to counter this evidence with its own expert testimony.

Debtor argues that this court should find, as a matter of law, that it did not breach its duty because the in running nip-point was not accessible to the operator as the machine was originally designed and manufactured. In the opinion of Debtor's expert witness, E.B. Eichenlaub, Jr., P.E., the nip-point was not accessible due to the fact that the distance that a man in the 97.5th percentile of height can reach, measured from the shoulder pivot point to the tips of the fingers, is 30.8 inches. Eichenlaub Affidavit at ¶ 28. *See also* Exhibit 3 to Eichenlaub Affidavit. Eichenlaub calculated the distance on the machine from the nip-point to a 97.5th percentile male operator's shoulder pivot point to be 39.8 inches. Eichenlaub Affidavit at ¶ 28. Therefore, Eichenlaub concludes that the nip-point was not accessible because, from the normal operating position, an operator with a 30.8 inch reach could not touch the nip-point, which was 39.8 inches away, without activating one of the originally designed safety features.

Carr's expert, J. Kenneth Blundell, Ph.D.,[5] disagrees with Eichenlaub's contention that the nip-point was adequately guarded and therefore not accessible. Blundell defines the nip-point as being "accessible" to the operator when "he could intentionally stick his hand in, fall into, or be inadvertently pulled into the nip-point while standing in his normal operator's position." Affidavit of J. Kenneth Blundell, ¶ 12(b) (hereafter "Blundell Affidavit"). Blundell's affidavit stated that the reach of an average man is 31½

---

5. Blundell obtained a Bachelor of Science in Mechanical Engineering at the University of Salford, England, in 1972, a Master of Science in Production Engineering from the University of Longhborough, England, and a Ph.D. in Mechanical Engineering from the University of Nottingham, England, in 1977.

inches and, therefore, any nip-point closer than 31½ inches is accessible. Blundell Affidavit at ¶ 12(c). Due to the height of this nip-point and the dynamics of the human body, including its ability to bend at the waist, Blundell asserts that the nip-point was accessible to the operator from his normal operating station in front of the machine. Blundell Affidavit at ¶ 12(b). Blundell opined that an interlocking barrier guard, which was not part of the original design of the machine, would have minimized the accessibility of the nip-point, thereby preventing Carr's injuries. Blundell Affidavit at ¶ 12(g). Furthermore, Blundell asserts that the originally designed safety features would not have prevented Carr's injuries. *See* Blundell Affidavit at ¶ 12(e), (f). Thus, it is Carr's contention that, even if the nip-point was out of the operator's reach as Debtor contends, the safety features would not have prevented his accident. Using this analysis, the nip-point was accessible under Blundell's definition.

The parties dispute whether the nip-point was accessible to the operator of the machine as originally designed. This is a disputed issue of material fact that cannot be decided on a motion for summary judgment.

### C. Proximate Cause

Debtor correctly asserts that even if the nip-point was accessible to an operator under the original design of the machine, there can be no liability for negligence on Debtor's part if the design was not the proximate cause of Carr's injuries. Thus, if Carr is able to demonstrate that the removal and/or modification of the original safety features may not have been the sole proximate cause of his injuries, Debtor may not be relieved of its liability as a matter of law.

### 1. Cause-in-Fact

Debtor contends that the accident was caused when Carr's gloved hand was caught on the wire moving through the machine, but before it reached the nip-point, and not through the failure of the originally designed safety features to adequately protect the nip-point. Furthermore, Debtor argues that an interlocking barrier guard, as suggested by Carr's expert, would not have prevented Carr's injury, only delayed it for a matter of seconds.

Carr contends, however, that the safety bar, even as originally designed and operated, would not have stopped the machine quickly enough to prevent his injuries. Thus, the parties dispute whether any safety feature adequately protected the operator from access to the nip-point. This issue of fact is material and cannot be decided on a motion for summary judgment.

### 2. Intervening Cause

Notwithstanding the foregoing, Debtor argues that the removal and modification of the original safety features constituted an intervening and superseding cause of Carr's injuries. Debtor cites the Illinois "cause versus condition" rule as adopted by the Illinois Supreme Court in *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 45 N.E.2d 665 (1942):

> [I]f the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act.

*Id.*, 45 N.E.2d at 675. The test prescribed by the *Merlo* court for determining proximate cause is whether "the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence." *Id.* Debtor asserts that the removal and modification of the originally designed safety features was unforeseeable. Therefore, Debtor concludes that it merely furnished a condition which made Carr's injury possible and that it was the unforeseeable removal or modification of virtually all of the machine's safety devices, by a third person, which was

the intervening efficient cause of Carr's accident.

Carr, however disputes this assertion, claiming that the removal or modification of the safety devices was not an intervening cause due to the fact that the safety devices as originally designed were not intended to prevent, and would not actually have prevented, his injuries. As noted above, the parties dispute the basic factual issue of whether the safety mechanisms incorporated into the machine as originally designed and manufactured would have prevented the accident. We cannot determine this issue by way of summary judgment.

### III. CONCLUSION

The accessibility of the nip-point is a material fact in dispute, the determination of which will require expert testimony and an assessment of credibility, precluding summary judgment. If Carr's injuries would not have been incurred while operating the machine as it was originally designed, then the parties agree that Debtor has no liability. Whether Debtor was negligent in designing the machine based upon the standards in effect in 1948 and Debtor's contributory liability, if any, are also matters for the trial court to determine based upon the evidence presented to it.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **2nd** day of **May, 1995,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED** that Debtor's oral motion for summary judgment is **DENIED** and the case may proceed in the Illinois state courts. The execution of any judgment issued by the state court in Illinois in favor of Carr, however, will be dealt with through the confirmed plan of reorganization.

It is **FURTHER ORDERED** that the Carrs' objection to entry of findings of fact pursuant to Fed.R.Civ.P. 56 is **OVER-RULED.**