OPINION OF THE COURT
Helen E. Freedman, J.
In these motions for summary judgment and cross motions to strike made in connection with the New York City asbestos litigation,* two significant issues are raised. The first issue involves the application of the "military contractor defense”, as outlined in Boyle v United Technologies Corp. (487 US 500, 108 S Ct 2510 [1988]), to asbestos-containing products produced for military purposes and the second concerns the sufficiency of product identification prior to trial.
In all of the above-captioned cases defendant Eagle-Picher Industries, Inc. (Eagle-Picher) contends that its compliance with military contract specifications furnished by the United States Government is a complete defense to any claims grounded in negligence or strict liability. In the Weitzman case only, all of the moving defendants (Eagle-Picher, Keene Corporation, Armstrong World Industries, Inc., GAF Corporation, Owens-Illinois, Inc. and Fibreboard Corporation) claim that their products have not been sufficiently identified.
I
Plaintiffs are widows of Brooklyn Navy Yard workers, all of whom died allegedly as a result of exposure to asbestos-containing products in the Brooklyn Navy Yard. Max Weitzman was employed as an outside machinist between 1943-1946 and died in January 1969. Donald Stridiron was employed as a boiler room laborer between 1951-1966 and died in August 1987. Donald McCorry worked as an electrician between 1952-1962 and died in January 1981.
*44 The Navy specifications . pursuant to which Eagle-Picher supplied its product specifically required asbestos but said practically nothing about health warnings except insofar as it prescribed as follows how the packages should be marked:
"G-l. Packaging. Unless otherwise specified, commercial packages are acceptable under this specification.
"G-2. Packing. Unless otherwise specified, the subject commodity shall be delivered in substantial commercial containers of the size commonly used, so constructed as to insure safe delivery by common or other carriers to the point of delivery at the lowest rate, and to withstand storage, rehandling, and reshipment without the necessity for further packaging.
"G-3. Marking. Unless otherwise specified, shipping containers shall be marked with the name of the material, the type, and the quantity contained therein, as defined by the contract or order under which the shipment is made, the name of the contractor, the number of the contract or order, and the gross weight.” (Navy Dept Specification: Cement, Insulation, High Temperature ¶ G.)
The gravamen of the complaint against Eagle-Picher brought in both negligence and strict liability is that failure to warn users of the potentially dangerous nature of its asbestos-containing insulation cement, Super 66, was a breach of its duty and that nothing in the above-cited specifications precluded such warnings.
The identical issue involving the same products, same defendants, and same site of exposure has been addressed by the Honorable Charles Sifton in Ferraiuolo v Acands, Inc. (US Dist Ct, ED NY, Dec. 30, 1988, docket No. 87-1070 [permission for interlocutory appeal granted, Jan. 31, 1989, docket No. 89-7107, appeal pending]). The Ferraiuolo court concluded that "Because defendant has failed to demonstrate a conflict between state tort law and the federal specifications pursuant to which Eagle-Picher claims to have acted” the immunity from suit afforded to a military supplier of a defectively designed helicopter (as in Boyle v United Technologies Corp., supra) did not apply to suits based on the common-law duty to warn.
It found that there was no specification that expressly precluded the warnings even though there is a memorandum to the Navy to the effect that certain asbestos manufacturers "would be glad to get a brief statement of precautions” about the products, and the Navy responded that "from a health standpoint [the Navy and United States Maritime Commis *45 sion] do not believe any specification changes are necessary.” The court held that the Boyle defense applied only where a "significant conflict” exists between an identifiable Federal policy or interest and the operation of State law. Since EaglePicher as manufacturer could have complied with both the military specifications and also placed adequate warnings on its packages, without in any way frustrating any identifiable Federal interest, there was no significant conflict. In fact, there was total silence on the subject of warnings.
Similarly, the Federal District Court in In re Hawaii Fed. Asbestos Cases (715 F Supp 298, 299-300 [D Hawaii, Oct. 24, 1988]) rejected the Boyle defense stating that
"State law cannot be preempted under the terms of Boyle unless the subject matter of the government contract touches an area of 'uniquely federal interest’ and there is a 'significant conflict’ between state law and the federal interest. * * *
"Clearly, the defendants could have complied with their state law-imposed duty to provide adequate warnings without breaching their government contracts.”
Boyle (supra), which involves specific design features in a military helicopter (the Federal specifications called for a hatch which opened outward while safety standards would have provided for a hatch that opened inward), sets forth three elements that must be satisfied in order to successfully establish the military contractor defense. The three elements are: first, that the United States must have approved reasonably precise specifications for the product in question; second, the product must have conformed to these specifications; and finally, the supplier must have warned the United States about dangers in using the product which were known to the supplier, but not to the United States (Boyle v United Technologies Corp., 487 US, supra, at —, 108 S Ct, supra, at 2518). In order to satisfy the first element of the Boyle test, not only must there be governmental approval of design of the product, but such approval must be a discretionary function of the Government. (Trevino v General Dynamics Corp., 865 F2d 1474 [5th Cir 1989].) Because the Government is immune from tort liability in the exercise of its discretionary functions under an exception to the Federal Tort Claims Act (28 USC) § 1346 (b) and 28 USC § 2680 (a), a contractor who supplies products approved, pursuant to this discretionary function exception, is also immune. (Boyle v United Technologies Corp., 487 US, supra, at —, 108 S Ct, supra, at 2518.) In Trevino (supra), the *46 court found that the level of supervision or review of specifications by the Government was not sufficient to constitute approval of the design and was therefore not a discretionary function. Thus, the first element of Boyle was not satisfied.
Similarly, the First Circuit determined that the failure by the United States Government to warn workers of the dangers of asbestos is not a discretionary function of the United States Government and thus, immunity against claims for failure to warn does not obtain (Dube v Pittsburgh Corning, 870 F2d 790 [1st Cir, Mar. 27, 1989]). This court agrees that the failure to warn is not a discretionary function wholly within the purview of the Federal Government. Since the protections afforded contractors under Boyle (supra) are derived from governmental immunity under the Federal Tort Claims Act, a finding that the failure to warn is not a discretionary function of Government means that Eagle-Picher cannot satisfy the first requirement of the military contractor defense.
Eagle-Picher also does not satisfy the last element of the test which relates to the state of knowledge possessed alternatively by Eagle-Picher and the United States. While EaglePicher contends that the Government knew at least as much as it did about the danger of asbestos exposure, the question of the relative state of knowledge between the Government and Eagle-Picher is, at best, a question of fact and, therefore, beyond the scope of a motion for summary judgment. (Ferraiuolo v Acands, Inc., supra.)
Additional support for rejecting the military contractor defense here derives from the fact that asbestos was not exclusively used in military equipment. Since asbestos was used as insulation material for products other than military hardware, it is not by definition strictly military equipment. (In re Hawaii Fed. Asbestos Cases, supra.)
Eagle-Picher’s reliance on Casabianca v Casabianca (104 Misc 2d 348 [Sup Ct, Bronx County 1980], affd 79 AD2d 1117 [1st Dept 1981]) for the proposition that New York recognizes the military contractor defense is misplaced. That case, decided well before the passage of the toxic tort revival statute, dealt with the malfunctioning of a pizza machine which was originally built as a dough-making machine for military use during World War II. The court in that case specifically limited its application to defective machinery procured for military purposes during times of war. The salutary purpose of the Legislature in enacting the toxic tort statute, to provide *47 compensation to those injured by exposure to asbestos, would be frustrated, if this court were to rely on a decision not involving a toxic substance and predating the statute.
For the reasons set forth above, Eagle-Picher’s motion for summary judgment is denied and the cross motion to strike the military contractor defense is granted.
II
All of the moving defendants suggest that there is insufficient evidence linking their product to Max Weitzman. These defendants suggest that since the Yard covered 289.82 acres, employed approximately 70,000 workers during World War II and none of the co-workers cited by Weitzman saw him working in the vicinity of asbestos, that there is inadequate product identification in the Weitzman case. At best, the defendants claim that the evidence presented shows that their product was found somewhere in the Brooklyn Yard at the approximate time Max Weitzman worked there. In addition, GAF contends that since it did not manufacture asbestos in 1946, it could not be held liable to plaintiff.
In opposition, plaintiffs refer to co-worker depositions which place asbestos products manufactured by the moving defendants within the general work areas used by Max Weitzman. In addition, the March 8, 1989 affidavit of co-worker Edward Rizzuto attests to the fact that Weitzman worked on the U. S. S. Missouri which continued at the relevant time period.
The question of product identification is largely a question of fact. (See, Sprinkle v Celotex Corp., US Dist Ct, ED SC, July 8, 1988, docket No. 87-86 Civ 7; see also, Lockwood v AC&S, Inc., 109 Wash 2d 235, 744 P2d 605 [Sup Ct 1987].) Plaintiff has placed Max Weitzman in the vicinity of an area where asbestos products were used on a regular basis. Co-workers have identified products belonging to the various defendants at this site during the years Weitzman was employed at the Yard. (See, Nutt v AC&S Co., 517 A2d 690 [Del Super Ct 1986]; see also, In re Fela Asbestos Cases, 646 F Supp 610 [WD Va 1985].) GAF’s contention that it did not manufacture asbestos at the relevant time period is specious. In 1967, it merged with the Ruberoid Corporation which has been identified by co-workers cited by plaintiff. (See, Schumacher v Richards *48 Shear Co., 59 NY2d 239 [1983]; Hartford Acc. & Indem. Co. v Canron, Inc., 43 NY2d 823 [1977] [dealing with the liability of a corporation for torts committed by a predecessor corporation].)
Accordingly, the motions for summary judgment are denied.

 The toxic tort revival statute exacted in 1986 permitted personal injury and wrongful death suits for a period of one year on behalf of parties who were exposed to or ingested one of five substances including asbestos, and for whom the eifects of the exposure (or ingestion) were not apparent until after the Statute of Limitations had expired. (L 1986, ch 682, § 4.) All of the asbestos-related personal injury and wrongful death cases commenced in New York City, pursuant to this statute, have been assigned to this court and are clustered primarily according to site of exposure.