**In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.**

Nos. 92 Civ. 130 (SWK), (92 Civ. 0130 to 92 Civ. 0136).

United States District Court, S.D. New York.

Oct. 15, 1992.

Wells, Wells, Marble & Hurst by J. Jerry Langford, Walter D. Willson, Kelly D. Simpkins, Jackson, Miss., for claimant, appellant Sarah M. Lancaster.

Paul William Beltz, P.C. by Kevin J. Sullivan, Buffalo, N.Y., for claimants, appellants Robert J. Seufert, Jr., Darryl Mac-Neil, Paul D. MacNeil and Timothy Willis.

Harvey, Pennington, Herting & Renneisen, Ltd. by William G. Adamson, Philadelphia, Pa., for claimant, appellant Robert V. Rodgers.

Offerman, Mahoney, Cassano, Pigott, Greco & Whalen by Eugene F. Pigott, Jr., Buffalo, N.Y., for claimant, appellant Joseph Dotterweich.

Sol H. Weiss and Alan Starker, Philadelphia, Pa., for claimant, appellant Donna Tozer.

Heller & Owen by Gregory James Owen, Encino, Cal., for claimant, appellant Arland Paul.

Kaye, Scholer, Fierman, Hays & Handler by Herbert Stephen Edelman, Steven E.

Fox, New York City, Skadden, Arps, Slate, Meagher & Flom by Gary E. Crawford, Katherine A. Armstrong, Richard T. Bernardo, New York City, for debtors, appellees.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Appellants/Claimants[1] appeal from a Memorandum Decision of the United States Bankruptcy Court for the Southern District of New York (Liflind, C.J.) (the "Bankruptcy Court"), dated March 6, 1990, and amended March 7, 1990, holding that the Bankruptcy Court had subject matter jurisdiction to make a threshold determination regarding the allowance or disallowance of (1) personal injury tort or wrongful death claims which may have been asserted against an inappropriate (wrong) defendant or Debtor and (2) personal injury tort or wrongful death claims which may be barred, as a matter of law, by the government contractor defense established in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (*"Boyle"*). *See In re Chateaugay Corp.*, 111 B.R. 67 (Bankr.S.D.N.Y.1990) (the "Jurisdiction Opinion" or the "March 7, 1990 Opinion").

Appellants also appeal from an October 21, 1991 Memorandum Decision of the Bankruptcy Court granting Appellees'[2] motion for summary judgment on the grounds that the government contractor defense shields the Appellees from liability for claims arising from allegedly defective vehicles sold to Appellants, *see In re Chateaugay Corp.*, 132 B.R. 818 (Bankr. S.D.N.Y.1991) (the "October 21, 1991 Opinion"), and a final Order, dated November 13, 1991, "Granting Debtors' Motion for Summary Judgment on Objection to Allowance of Certain Claims ... Involving Postal Dispatchers" (the "November 13, 1991 Order"). By Order of January 30, 1992, this Court consolidated the appeals relating to the above issues.

### Background[3]

On September 19, 1983 (the "Acquisition Date"), pursuant to a stock purchase agreement dated July 24, 1983, Nakoma Corporation, an indirect subsidiary of LTV Corporation ("LTV"), acquired all of the capital stock of AM General Corporation ("AM General"), a wholly owned subsidiary of American Motors Corporation ("AMC"). On September 21, 1983, Nakoma Corporation transferred the stock of AM General to LTV Aerospace and Defense Company ("LTVAD"). Since September 21, 1983, AM General has been a wholly owned subsidiary of LTVAD.

On July 17, 1986 (the "Filing Date"), and thereafter, LTV, LTVAD, AM General and their affiliates each filed a petition for reorganization under chapter 11 of the Bankruptcy Code (the "Code"), and have continued in the management and possession of their businesses and assets as debtors-in-possession pursuant to §§ 1107 and 1108 of the Code. No trustee or examiner has been appointed.

On October 6, 1989, LTV, LTVAD and AM General on behalf of themselves and the other debtors and debtors-in-possession (collectively, the "Debtors" or "Appellees") filed with the Bankruptcy Court their objection (the "Objection") to 32 claims (the "Claims") which alleged, *inter alia*, that claimants and claimant's decedents (the "Claimants" or the "Appellants") sustained severe injuries and extensive damages as a result of accidents involving an AM General designed and manufactured motor vehicle known as the "Postal Dispatcher."[4]

---

1. The Appellants shall be referred to throughout this opinion as either "Appellants" or "Claimants."

2. The Appellees shall be referred to throughout this opinion as either "Appellees" or "Debtors."

3. The facts below are taken from Chief Judge Liflind's prior opinions reported at 111 B.R. 67 (Bankr.S.D.N.Y.1990) and 132 B.R. 818 (Bankr. S.D.N.Y.1991).

4. The accidents involved both postal carriers and ordinary citizens riding in Postal Dispatchers. Ordinary citizens were also involved because in 1973, the Post Office began selling surplus Postal Dispatchers to the general public on an "as is, where is" basis. Affidavit of Ray-

Specifically, Debtors objected to Claims that alleged that AM General designed and sold a vehicle that had a lower resistance to rollover than typical passenger cars, a characteristic which they claim is a product defect known as "rollover propensity." Each of the Claims objected to was based upon the allegedly defective design of the Postal Dispatcher and a failure to warn of the risks associated with the allegedly defective design. The Claims sounded in breach of warranty, negligence, strict tort liability, or other state law theories of recovery.

The following is the substance of the Debtors' Objection to the Claims.[5] Debtors assert that AM General designed, manufactured, and sold over 100,000 of these vehicles to the United States Post Office and its successor, the United States Postal Service (collectively, the "Post Office") to be employed as mail delivery vehicles, pursuant to contracts with the United States Government. The Debtors further allege that AM General did not sell any Postal Dispatchers to any of the Claimants referred to herein. It is also alleged that LTV and LTVAD did not design, manufacture, or sell the Postal Dispatchers, and are not proper parties against whom claims involving the Postal Dispatchers can be asserted. Moreover, the Debtors state that LTV never held any ownership interest in AM General, and that LTVAD did not acquire any ownership interest prior to the production of some units of the last model of the Postal Dispatchers manufactured by AM General. Debtors assert that LTVAD as owner of the stock of AM General was not involved in the design, manufacture, or sale of any Postal Dispatchers. Finally, the Debtors argue that as a result of recent case law recognizing the government contractor defense, including the decision of the Supreme Court in *Boyle*, a government contractor cannot be held liable for defective design or failure to provide warnings, when the product was manufactured in accordance with reasonably precise specifications approved by the

Government. The Debtors assert that the Post Office and the United States Government approved reasonably precise specifications with regard to the Postal Dispatchers, which conformed to those specifications. The Debtors also contend that the manufacturers of the Postal Dispatchers did not know of any risks in the use of the vehicle that were not known to the Post Office and the United States Government.

Based on the aforementioned assertions, the Debtors requested that with respect to LTV and LTVAD, the Claims be disallowed entirely, and with respect to all of the Debtors (including AM General), the Claims be disallowed to the extent they allege that the Postal Dispatcher was defectively designed or that Debtors are liable for failure to warn of the risks associated with the design.

In contrast, the Claimants, who were injured in the Postal Dispatcher accidents, argued to the Bankruptcy Court that it did not have jurisdiction to determine Debtors' Objection to allowance of certain Claims involving Postal Dispatchers. Second, the Claimants contended that even if such jurisdiction existed, the government contractor defense, as set forth in *Boyle*, did not bar the Claimants' Claims against the Debtors as the defense does not apply in a civilian context and the Government had not promulgated or approved reasonably precise specifications concerning certain features of the Postal Dispatchers.

As a preliminary matter, on March 7, 1990, the Bankruptcy Court held that it had subject matter jurisdiction to determine the threshold issues of whether or not: (1) the LTV and LTVAD assertions in the Objection that the Claims against them must be disallowed because they had no involvement whatsoever in the design, manufacture, or sale of Postal Dispatchers, are valid; and (2) LTV, LTVAD, and AM General are entitled to immunity from civil liability under the government contractor defense enunciated by the Supreme Court in *Boyle*, and, consequently, whether, as a

---

mond J. Divacky, sworn to on October 5, 1989 ("Divacky Aff."), at ¶ 17.

**5.** The LTV Bank Group has joined in the Debtors' request for the entry of an order disallowing these claims.

matter of law, the Claims must be disallowed. The Bankruptcy Court also held, however, that it did not have jurisdiction to liquidate or estimate the Claims for purposes of distribution, if, as a threshold matter, it determined that the Claims were sustainable as a matter of law. *See In re Chateaugay Corp.*, 111 B.R. at 67.

Having found that it had jurisdiction to determine these threshold issues, on October 21, 1991, the Bankruptcy Court granted Debtors' motion for summary judgment, holding that the government contractor defense shields the Debtors from liability for Claims arising from the allegedly defective vehicles sold to Claimants. *See In re Chateaugay Corp.*, 132 B.R. at 827.[6] On November 13, 1991, the Bankruptcy Court issued its final "Order Granting Debtors' Motion for Summary Judgment on Objection to Allowance of Certain Claims ... Involving Postal Dispatchers." These appeals followed and were consolidated by the Court on January 30, 1992.[7]

The issues before this Court on appeal are as follows:

(1) Did the Bankruptcy Court have jurisdiction to consider Debtors'/Appellees' Objection to Allowance of Certain Claims Involving Postal Dispatchers and, on a motion for summary judgment, to enter an order disallowing such Claims as a matter of law?

(2) Does the government contractor defense, as set forth in *Boyle*, bar Claimants'/Appellants' Claims against the Debtors?

(a) Does the government contractor defense apply to non-military or civilian vehicles?

(b) Were the requisite elements of the government contractor defense satisfied with respect to these Claims?

## Discussion

### I. Standard of Review

This Court's review of bankruptcy court orders is plenary, with conclusions of law, including jurisdictional rulings, being reviewed *de novo*. *In re Financial News Network, Inc.*, 126 B.R. 152 (S.D.N.Y.1991); *In re Wise*, 119 B.R. 392 (E.D.N.Y.1990). The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard. *In re Chateaugay Corp.*, 104 B.R. 637 (S.D.N.Y.1989); *In re Beker Indust. Corp.*, 89 B.R. 336 (S.D.N.Y.1988).

### II. Jurisdiction

■ As stated above, in its March 7, 1990 Opinion, the Bankruptcy Court determined that it had jurisdiction to hear and determine Debtors' Objection to allowance of certain Claims involving Postal Dispatchers and, on a motion for summary judgment, to enter an order disallowing such Claims as a matter of law. Appellants urge this Court to reverse that ruling on the grounds that the Bankruptcy Court's decision to disallow their personal injury tort and wrongful death Claims transgressed the statutory limits on jurisdiction contained in 28 U.S.C. § 157,[8] the

---

**6.** Although the Bankruptcy Court held that it had jurisdiction to determine the threshold issue of whether the claims against LTV and LTVAD must be disallowed because they had no involvement in the design, manufacture, or sale of Postal Dispatchers, it did not consider that matter in its October 21 Opinion as the parties merely touched on the issue in their briefs, and its finding disallowing the Claims on the basis of the government contractor defense was dispositive. Accordingly, that issue is not properly the subject of this appeal.

**7.** The November 13, 1991 Order of the Bankruptcy Court is a final order appealable to this Court pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's Memorandum Decision dated March 6, 1990, as amended March 7, 1990, is brought up for review by virtue of the appeal from the November 13, 1991 Order. *See Dow Chemical v. Rascator Maritime, S.A.*, 782 F.2d 329 (2d Cir.1986); 28 U.S.C. § 158(c).

**8.** The most relevant provisions of 28 U.S.C. § 157 for purposes of this appeal are the following:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 [11 U.S.C.S. §§ 101 et seq.] and all core proceedings arising under title 11 [11 U.S.C.S. §§ 101 et seq.], or arising in a case under title 11 [11 U.S.C.S. §§ 101 et seq.] ..., and may enter appropriate orders and judgments, subject to review under section 158 of this title [28 U.S.C.S. § 158].
(b)(2)(B) Core proceedings include, but are not limited to—allowance or disallowance of claims against the estate, and estimation of

constitutional limits outlined by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), and the prohibition against bankruptcy courts trying and otherwise disposing of personal injury and wrongful death claims. While the Court has reservations about holding that the Bankruptcy Court, expert in the restructuring of debtor-creditor relations, has subject matter jurisdiction to disallow Appellants' personal injury tort and wrongful death Claims based on the government contractor defense, it concurs with the Bankruptcy Court's March 7, 1990 Jurisdiction Opinion in its entirety. The Bankruptcy Court was correct in concluding that the actual provisions of 28 U.S.C. § 157, as well as the broad jurisdictional mandate enunciated by the Second Circuit in *In re Ben Cooper,*

*Inc.,* 896 F.2d 1394 (2d Cir.1990), compel a finding that the Bankruptcy Court has jurisdiction to disallow legally deficient personal injury tort and wrongful death claims in the first instance.[9]

To hold otherwise, would mean either stripping the bankruptcy courts of all jurisdiction with respect to personal injury tort and wrongful death claims, a result clearly inconsistent with the statutory language of the 1984 Amendments to the Bankruptcy Code[10] as well as precedent in this Circuit,[11] or creating what this Court deems an unworkable system, proposed by certain Appellants, in which bankruptcy courts would have jurisdiction to allow or disallow personal injury tort or wrongful death claims on traditional bankruptcy grounds, but not on non-bankruptcy grounds.

At least one Appellant claims that a bankruptcy court "may not allow or disal-

---

claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 [11 USCS §§ 1101 et seq., 1201 et seq. or 1301 et seq.] but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11....

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.... In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge....

**9.** *Pettibone Corp. v. Easley,* 935 F.2d 120 (7th Cir.1991), does not warrant a different result. In *Pettibone,* following confirmation of the debtor's plan of reorganization, the debtor asked the bankruptcy court to rule on whether certain tort claims were barred by statutes of limitation. The Seventh Circuit held that the court lacked jurisdiction to decide the question. The reason, however, was not that the motion was dispositive, as Appellants suggest, but rather that the debtor's plan of reorganization had already been approved and, as a result, the bankruptcy court had no further role to play. As Judge Easterbrook noted, a debtor "may not come running to the bankruptcy judge every time something unpleasant happens." *Id.* at 122. Nothing in *Pettibone* suggests that had the debtor still been in active reorganization proceedings before the bankruptcy court, the bankruptcy court would have lacked jurisdiction to enter dispositive orders concerning legally insufficient personal injury tort claims. *Id.* at 122.

In any event, the Court respectfully disagrees with *Pettibone's* conclusion that a bankruptcy court lacks jurisdiction to decide certain defenses that establish whether a personal injury claim against a bankrupt estate exists. *See Pettibone,* 935 F.2d at 123. As the Bankruptcy Court noted, determination as to the existence or non-existence of a claim is a core matter, and it is essential to the bankruptcy process that this determination be made in an expedited matter. *See* October 21, 1991 Opinion, at 821 n. 4.

**10.** Section 157(b)(2)(B) explicitly states that proceedings are deemed non-core only if they relate to the estimation or liquidation "of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution...." 28 U.S.C. § 157(b)(2)(B).

**11.** In *In re Johns–Manville Corp.,* 45 B.R. 823, 825–26 (S.D.N.Y.1984), this Court held that bankruptcy courts are permitted, under 28 U.S.C. § 157(b)(2)(B), to estimate tort claims for purposes other than distribution. Specifically, the Court stated that:

Even assuming that section 157(b)(5) requires that all personal injury and wrongful death claims be tried in the district courts,.... [s]ection 157(b)(2)(B) does not exclude from the definition of core proceedings estimation of personal injury and wrongful death claims for all purposes. The section is limited to estimation "for purposes of distribution." This leaves estimation for other purposes within the jurisdiction of the bankruptcy court.

45 B.R. at 826. *See also In re UNR Indus., Inc.,* 45 B.R. 322, 326–27 (N.D.Ill.1984); *In re Poole Funeral Chapel, Inc.,* 63 B.R. 527, 532 (Bankr. N.D.Ala.1986).

low any personal injury tort or wrongful death claim on nonbankruptcy grounds," but "can disallow [these] claims on such traditional bankruptcy grounds as discharge of a particular debt or untimely filing of a proof of claim, among other reasons." *See* Brief of Appellant–Claimant Sarah M. Lancaster ("Lancaster Brief"), at 12, n. 9. That Appellant, however, has not articulated any basis for determining, with any particularity or consistency, which grounds should be considered traditional bankruptcy grounds and which should be considered non-bankruptcy grounds, and this Court can think of none. Further, any effort to so distinguish undercuts Appellants' argument that disallowance in this case was the equivalent of "liquidation or estimation ... for purposes of distribution." 28 U.S.C. § 157(b)(2)(B). Appellants have argued before this Court and the court below that disallowance based on the government contractor defense falls into the jurisdictional exclusion contained in § 157(b)(2)(B) because such disallowance effectively values the personal injury and wrongful death claims at zero and denies the claimants any distribution from the estate. This argument, however, is equally applicable to situations where the disallowance is based on so-called traditional bankruptcy grounds. In fact, the potential for that result inheres in the very nature of an action to disallow a claim. Thus, it would be illogical for this Court to hold that bankruptcy courts can disallow personal injury tort and wrongful death claims so long as they do so on traditional bankruptcy grounds.

Accordingly, the Bankruptcy Court's determination that it had jurisdiction to entertain Debtors' Objection to allowance of certain Claims involving Postal Dispatchers

and disallow such Claims as a matter of law, is affirmed.[12]

## III. Summary Judgment

### A. The October 21, 1991 Opinion

In its October 21, 1991 Opinion, familiarity with which is assumed, the Bankruptcy Court held that the government contractor defense recognized in *Boyle* was applicable to actions for damages resulting from the use of nonmilitary equipment. *Id.* at 825–27. The Court also held that the Appellees satisfied each of the elements specified in *Boyle*, and as a matter of law properly invoked the government contractor defense. *Id.* at 822–24. Accordingly, the Bankruptcy Court found that Appellants' Claims involving Postal Dispatchers had no legal basis, and the Debtors were entitled to summary judgment disallowing the Claims to the extent they alleged that the Postal Dispatcher was defectively designed or that Debtors are liable for failure to warn of the risks associated with the design.

Appellants seek reversal of this decision on a number of grounds. First, they claim that the government contractor defense is not applicable to situations involving non-military equipment or equipment used for nonmilitary purposes. Second, Appellants contend that even if the defense applies in the nonmilitary context, the requisite elements necessary for application of the defense are not present in the instant action. Third, Appellants argue that because application of state or local law would not significantly interfere with any uniquely federal interest or frustrate the specific objectives of any federal legislation, the Bankruptcy Court erred in finding the government contractor defense applicable to the instant case.

---

**12.** Since the Court has determined that the Bankruptcy Court had jurisdiction to rule on the government contractor defense, it is unnecessary to even address appellants' request for abstention as that request was premised upon a determination that the Bankruptcy Court lacked jurisdiction. *See* Reply Brief of Appellants Robert J. Seufert, Jr., Darryl MacNeil, Paul D. MacNeil and Timothy Willis ("Seufert Rep. Brief"), at 4–5 ("plaintiffs' submit that the proper proce-

dure to follow after finding that the court below lacked jurisdiction would be [for this Court to abstain from handling the underlying personal injury actions, and] to remand the *Seufert, Willis*, and *MacNeil* cases back to the Supreme Court, Erie County...."). Accordingly, the Court will turn to the second issue on appeal, namely, the applicability of the government contractor defense.

### B. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmoving's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. at 330, n. 2, 106 S.Ct. at 2556, n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).[13]

---

**13.** In its October 21, 1991 Opinion, the Bankruptcy Court notes that Appellants failed to include in their response to Debtors' motion for summary judgment "a separate, short, and concise statement of the material facts as to which [they] contended that there exists a genuine issue to be tried", as required by Local Bankruptcy Rule 13(h). Under Rule 13(h), the result of this failure is that the material facts set out in Appellees' statement are deemed admitted as a matter of law. While Appellants' failure to comply with Local Bankruptcy Rule 13(h) is, taken alone, a sufficient ground for the granting of summary judgment in Appellees' favor, the

### C. Application of the Government Contractor Defense

■ In *Boyle*, the Supreme Court held that in certain circumstances federal law may shield government contractors from tort liability for injuries arising from design defects in military equipment. Specifically, the Supreme Court, relying on the earlier decisions of the Fourth and Ninth Circuits in *Tozer v. LTV Corp.*, 792 F.2d 403 (4th Cir.1986) and *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983), respectively, held that:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518.

Sitting by designation as a member of a panel of the Eleventh Circuit, former Supreme Court Justice Powell analyzed the *Boyle* decision as follows:

> [T]he Court recognized that in certain areas of "uniquely federal interests," state law must be preempted, and if necessary replaced, by federal common law. One such area of uniquely federal interest is the government's procurement of military hardware. The Court grounded the contours of the defense in the "discretionary function" exception to the

Federal Tort Claims Act, 28 U.S.C. § 2680(a), that protects the United States from liability for its agents' performance of duties involving discretionary decisions. [487 U.S. at 504–512,] 108 S.Ct. at 2514–2518.[14] Without the defense, the government's own tort immunity for its discretionary functions would be undermined. Contractors held liable for design features that were the subject of discretionary approval by the government would predictably pass on the costs of liability, ultimately imposing costs on the government that its immunity was intended to preclude. *See id.* [at 511, 108 S.Ct.] at 2518.

Justice Powell went on to explain that:

> The [government contractor] defense derives from the principle that where a contractor acts under the authority and direction of the United States, it shares the sovereign immunity that is enjoyed by the government. *See Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). In the military context, this immunity serves the further important purpose of shielding sensitive military decisions from scrutiny by the judiciary, the branch of government least competent to review them. Application of ordinary tort law to military design and procurement decisions is not appropriate, for the government "is required by the exigencies of our defense effort to push technology towards its limits and thereby incur risks beyond those that would be

---

Bankruptcy Court went on to consider Appellants' other submissions and concluded that Appellants "have failed completely to produce any evidence to contradict any of the facts relied upon by the Debtors." *See* 132 B.R. at 822. Accordingly, the Court will not rely on the dictates of Local Bankruptcy Rule 13(h) in its review of the October 21, 1991 Opinion.

**14.** Prior to *Boyle*, many Circuits premised the government contractor defense on the *Feres* doctrine, which provides that the Federal Tort Claims Act ("FTCA") does not cover injuries to Armed Services personnel in the course of military service. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). According to the Fourth Circuit, military contractor liability would conflict with the *Feres* doctrine because the increased cost of the contractor's

tort liability would be added to the price of the contract, and "[s]uch pass-through costs would ... defeat the purpose of the immunity for military accidents conferred upon the government itself." *Tozer v. LTV Corp.*, 792 F.2d 403, 408 (4th Cir.1986); *see also Bynum v. FMC Corp.*, 770 F.2d 556, 565–66 (5th Cir.1985); *Tillett v. J.I. Case Co.*, 756 F.2d 591, 596–97 (7th Cir.1985); *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 449 (9th Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984). In *Boyle*, however, the Supreme Court explicitly rejected the *Feres* doctrine as a basis for the defense, finding that its application "produces results that are in some respects too broad and in some respects too narrow." *Boyle*, 487 U.S. at 510–11, 108 S.Ct. at 2417–18; *see also infra* p. 349.

acceptable for ordinary consumer goods." *Tozer v. LTV Corp.*, 792 F.2d 403, 406 (4th Cir.1986) (quoting *McKay v. Rockwell International Corp.*, 704 F.2d 444, 449–50 (9th Cir.1983)).

Before turning to the issue of whether the three requisite conditions are met in the instant case, however, the Court must, as a threshold matter, determine whether the government contractor defense is applicable to a case involving damages resulting from nonmilitary equipment or products used for nonmilitary purposes, such as Postal Dispatchers.

Appellees argue that the only logical conclusion to draw from *Boyle* is that the Supreme Court clearly intended that the defense apply in the nonmilitary context. According to the Appellees, this intention is evidenced by the Court's reliance on the discretionary acts exception to the FTCA, which applies to nonmilitary contracts, rather than the *Feres* doctrine, which applies only in the military context. *See Boyle*, 487 U.S. at 510–12, 108 S.Ct. at 2517–19. By refusing to predicate *Boyle* on the *Feres* doctrine, the Court formulated the government contractor defense to reach nonmilitary products in an appropriate case. As contract procurement by the Post Office is considered a discretionary act within the meaning of the FTCA, the reasoning underlying *Boyle* must apply with equal force to suits premised on the allegedly defective design of the Postal Dispatcher as it does to the design of military equipment.

Appellees further argue that although *Boyle* involved a military helicopter, the Supreme Court, repeatedly referring to the defense as the "government contractor defense" and analyzing the potential liability imposed upon "government contractors", did not limit its discussion or the scope of its holding to military contractors. *See Boyle*, 487 U.S. at 505–06, 108 S.Ct. at 2514–15 (civil liability "arising out of the performance of federal procurement contracts" is an area of uniquely federal interest); *id.* at 507, 108 S.Ct. at 2515 (discussing the implications of "imposition of liability on Government contractors"); *id.* at 510,

108 S.Ct. at 2517 (referring to "the Government contractor defense"); *id.* at 513, 108 S.Ct. at 2519 (same); *id.* at 514, 108 S.Ct. at 2519 (same).

Finally, Appellees contend that the mere happenstance that military equipment has given rise to most of the government contractor defense cases cannot logically prove that the defense is limited to that context. As the Bankruptcy Court noted in its October 21, 1991 Opinion, 132 B.R. at 825, Justice Brennan, who dissented in *Boyle*, flatly stated that the majority's rationale extended to any design choice made in purchases by the federal government, whether it involved "NASA's Challenger space shuttle [or] the Postal Service's old mail cars." *Boyle*, 487 U.S. at 516, 108 S.Ct. at 2520 (Brennan, J., dissenting).

By contrast, Appellants claim that despite the rejection of the *Feres* doctrine, the government contractor defense espoused in *Boyle* is to be limited to military contractors. According to Appellants, the Supreme Court explicitly held that "liability for design defects in *military equipment* cannot be imposed" if the three criteria set forth in *Boyle* are satisfied. *Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518 (emphasis added). Moreover, the Court held that:

> It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of *military equipment* is necessary when the Government produces the equipment itself, but not when it contracts for the production. In sum, we are of the view that state law which holds Government contractors liable for design defects in *military equipment* does in some circumstances (when the three criteria cited above are met) present a "significant conflict" with federal policy and must be displaced.

*Id.* at 512, 108 S.Ct. at 2518 (emphasis added).

Furthermore, Appellants argue that although *Boyle* altered the scope of the government contractor defense, the policy underlying the defense remains "rooted in considerations peculiar to the military." *Nielsen v. George Diamond Vogel Paint*

Co., 892 F.2d 1450, 1455 (9th Cir.1990). The salient purpose behind the government contractor defense is to "encourage active communication between suppliers of *military equipment* and *military authorities* in the development and testing of equipment." *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 704 (4th Cir.1989) (emphasis added). As additional support for these propositions, Appellants point to the fact that the overwhelming majority of cases decided after *Boyle* involved a product either procured or used for military purposes. *See Stout v. Borg–Warner Corp.*, 933 F.2d 331, 332 (5th Cir.1991) (Army hawk Missile System Mobile Repair Unit); *In re Joint Eastern & Southern Dist. New York Asbestos Litig.*, 897 F.2d 626 (2d Cir.1990) (asbestos installed in Naval vessels); *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 68 (3d Cir.1990) (Army National Guard helicopter); *Skyline Air Service, Inc. v. G.L. Capps Co.*, 916 F.2d 977, 978 (5th Cir.1990) (Army helicopter); *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 243 (5th Cir.1990) (defective mortar shells supplied to Marine Corps); *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698 (4th Cir.1989) (Naval F/A–18 aircraft); *Smith v. Xerox Corp.*, 866 F.2d 135 (5th Cir.1989) (VIPER weapon simulator); *Garner v. Santoro*, 865 F.2d 629 (5th Cir.1989) (epoxy paint applied to Naval vessels); *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1475 (5th Cir.1989) (submarine); *Monks v. General Elec. Co.*, 919 F.2d 1189, 1190 (6th Cir.1990) (Army helicopter); *United States v. Lindberg Corp.*, 882 F.2d 1158 (7th Cir.1989) (tank gears); *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1313 (11th Cir.1989) (Air Force F–16); *In re Aircraft Litig.*, 752 F.Supp. 1326, 1330 (S.D. Ohio 1990) (Air Force EC–135N jet aircraft); *Maguire v. Hughes Aircraft Corp.*, 725 F.Supp. 821, 822 (D.N.J.1989) (Army National Guard helicopter); *Niemann v. McDonnell Douglas Corp.*, 721 F.Supp. 1019, 1021 (S.D.Ill.1989) (asbestos-containing products in Air Force T–29, C–131, C–54, and C–118); *Nicholson v. United Technologies Corp.*, 697 F.Supp. 598, 599 (D.Conn.1988) (Army helicopter): *Schwindt v. Cessna Aircraft Co.*, 1988 WL 148433 (S.D.Ga.1988) (Air Force O–Z aircraft); *Zinck v. ITT Corp.*, 690 F.Supp. 1331 (S.D.N.Y.1988) (night vision goggles used in Marine Corps helicopter).

Finally, Appellants contend that numerous courts have recently reaffirmed the reasoning in *Boyle,* and held that the government contractor defense was to be strictly limited to cases involving military equipment or products used for military purposes. *See In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806 (9th Cir.1992); *Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d at 1455; *Reynolds v. Penn Metal Fabricators, Inc.*, 146 Misc.2d 414, 550 N.Y.S.2d 811 (1990); *Weitzman v. Eagle–Picher Indus.*, 144 Misc.2d 42, 542 N.Y.S.2d 118, 121 (1989).

For the following reasons, the Court agrees with Appellants and finds that the government contractor defense is to be limited to the military context.

The analysis of *Boyle* was directed toward deciding the extent to which federal law should displace state law with respect to the liability of a military contractor. As the Appellees argue, the underlying premise in *Boyle* does apply to all government contracts, and is not limited to the military context. *See Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d at 1454. That premise is that there is a "uniquely federal interest" in potential liabilities arising out of the performance of any government contract, regardless of its military or civilian nature, and regardless of whether it is a procurement or a construction contract. *Id.* (citing *Boyle*, 487 U.S. at 504–06, 108 S.Ct. at 2514–15). However, the *Boyle* analysis did not end with this assumption. Rather, the *Boyle* Court stated that the uniquely federal interest inherent in all federal government contracts is a necessary condition for the displacement of state law, but not a sufficient condition. *Boyle*, 487 U.S. at 507, 108 S.Ct. at 2516. "Displacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law.'" *Nielsen* (quoting *Boyle*, 487 U.S. at 507, 108 S.Ct. at 2516).

In defining where such a "significant conflict" exists between federal and state law, the majority focused its analysis on the military context of the case. *Boyle*, 487 U.S. at 511, 108 S.Ct. at 2518 ("the selection of the appropriate design for military equipment to be used by our Armed Forces ... involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness"). The Court, however, rejected the *Feres* doctrine as an appropriate source of such a conflict. According to *Boyle*, the *Feres* doctrine, immunizing the Government from all liability for suits for service-connected injuries, would, if extended to contractors, be too broad in that it would immunize contractors from the results of their own negligence. *Nielsen*, 892 F.2d at 1454 (citing *Boyle*, 487 U.S. at 510, 108 S.Ct. at 2517). At the same time, *Boyle* stated that the *Feres* doctrine's scope of immunity is in one respect too narrow, as the doctrine "covers only service-related injuries, and not injuries caused by the military to civilians...." *Id.* (quoting *Boyle*, 487 U.S. at 510, 108 S.Ct. at 2517–18). The Court reasoned that the interests of the Government in avoiding scrutiny of sensitive military decisions, as for example, the design of a fighter plane—interests which led to the evolution of the *Feres* doctrine in the first instance—are the same regardless of whether the injured party in a given instance is a member of a military service, or a civilian. *Id.* (citing *Boyle*, 487 U.S. at 510–11, 108 S.Ct. at 2517–18).

The Court in *Boyle* therefore abandoned the *Feres* doctrine as defining the scope of the defense available to the military contractor in that case, and turned instead to the "discretionary function" exception to the FTCA. The Court determined that the design of military equipment is a "discretionary function" from which the Government itself would be immune from liability, and concluded that a defense of similar scope should be available to a military contractor. *Id.* Specifically, the Court held that:

It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518.

As the Ninth Circuit in *Nielsen* pointed out, however, despite its abandonment of the *Feres* doctrine, the Supreme Court in *Boyle* emphasized the importance of the military context by endorsing all aspects of *McKay v. Rockwell International*, except the limitation of its applicability to service-connected injuries, a limitation arising from its reliance upon the *Feres* doctrine. *Nielsen*, 892 F.2d at 1454. A review of *McKay* indicates that the roots of the defense lie in the special need for the maintenance of military discipline and the avoidance of litigation "second-guessing" sensitive military decisions. *McKay*, at 449. The defense is also essential in the military context because the "United States is required by the exigencies of our defense effort to push technology towards its limits and thereby to incur risks beyond those that would be acceptable for ordinary consumer goods." *McKay*, at 449–50.

Thus, this Court agrees with the Ninth Circuit's conclusion in *Nielsen* that although the Supreme Court's decision in *Boyle* altered the scope of the military contractor defense by holding that it was not limited to situations involving service-connected injuries, and changed the intellectual moorings from the *Feres* doctrine to the "discretionary function" exemption of the FTCA, the policy behind the defense remains rooted in considerations peculiar to the military. *Nielsen*, 892 F.2d at 1454–55; *see also Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 704 (4th Cir.1989) ("the very purpose of the government contractor defense is to encourage active communication between suppliers of military equipment and military authorities in the development and testing of equipment"); *Garner v. Santoro*, 865 F.2d 629, 634–36 (5th Cir.1989) (recognizing the principle that the policy behind the defense is rooted

in considerations peculiar to the military); *Trevino v. General Dynamics Corp.,* 865 F.2d 1474, 1483–84 (5th Cir.), *cert. denied,* 493 U.S. 935, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989) (same); *Harduvel v. General Dynamics Corp.,* 878 F.2d 1311, 1315–16 (11th Cir.1989) ("in the sensitive area of federal military procurement ... the balance [of safety concerns against cost and performance] is not one for state tort law to strike. Although the defense may sometimes seem harsh in its operation, it is a necessary consequence of the incompatibility of modern products liability law and the exigencies of national defense").

The Court also agrees with the *Nielsen* court's decision rejecting the military contractor defense as a bar to an action brought by a former employee of the Army Corps of Engineers against a paint manufacturer. In *Nielsen,* the plaintiff alleged that fumes from a paint he had used extensively while working for the Corps had caused him brain damage. Noting that the paint "was not designed for any special military purpose," *id.* at 1453, but rather was "designed to further civilian ... objectives," *id.* at 1455, the court affirmed the view expressed in *McKay,* that the military contractor defense does not apply to "an ordinary consumer product purchased by the armed forces." *McKay,* 704 F.2d at 451.

These conclusions are in accord with other post-*Boyle* decisions involving the procurement of nonmilitary equipment. *See In re Hawaii Federal Asbestos Cases,* 715 F.Supp. 298 (D.Hawaii 1988), *aff'd,* 960 F.2d 806 (9th Cir.1992); *Reynolds v. Penn Metal Fabricators, Inc.,* 146 Misc.2d 414, 550 N.Y.S.2d 811 (1990); *Pietz v. Orthopedic Equipment Co.,* 562 So.2d 152, 155 (Ala.1989) *cert. denied,* —— U.S. ——, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *Weitzman v. Eagle–Picher Indust.,* 144 Misc.2d 42, 542 N.Y.S.2d 118 (1989). For example, the *Hawaii Federal Asbestos Cases* actions involved individuals who were exposed to asbestos dust while serving in the United States Navy, and suffered asbestosis or cancer as a result. Defendants in the actions attempted to assert the government contractor defense as a barrier to liability.

The district court, however, struck the military contractor defense on the grounds that the federal interest in *Boyle* was the procurement of *military equipment* by the United States to be used by the armed forces. 715 F.Supp. at 300 (emphasis added). According to the district court, since asbestos insulation products were not military equipment, the manufacturer was entitled to no immunity under *Boyle.* The procurement of supplies by the United States is not enough to immunize the manufacturer under *Boyle. Id.* at 300.

The Ninth Circuit affirmed the district court's decision, finding that the *Boyle* Court repeatedly described the military contractor defense in terms limiting it to those who supply military equipment to the Government. *See* 960 F.2d at 810. Specifically, the Ninth Circuit recognized that the *Boyle* Court was "of the view that state law which holds Government contractors liable for design defects in *military equipment* does in some circumstances present a 'significant conflict' with federal policy and must be displaced," and that "[l]iability for design defects in *military equipment* cannot be imposed [ ] pursuant to state law," when the elements of the defense are satisfied. *Id.* at 810–11 (quoting *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518) (emphasis added).

The Ninth Circuit also found that limiting the defense to the military context was consistent with the purposes the *Boyle* Court ascribed to the defense. The *Boyle* Court noted that the military makes highly complex and sensitive decisions regarding the development of new equipment for military usage. Allowing the contractors who are hired to manufacture that equipment to be sued for injuries caused by it would impinge unduly on the military's decision-making process. The contractors would either refuse to produce the military equipment for the Government or would raise their prices to insure against their potential liability for the Government's design. *Id.* (citing *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518). These same concerns do not exist with respect to products readily available on the commercial market as the products

have not been developed on the basis of involved judgments made by the military. *Id.* Thus, the Ninth Circuit held that since the asbestos insulation alleged to have caused plaintiffs' injuries is not military equipment, its manufacturers are not protected by the military contractor defense.

Similarly, in *Reynolds v. Penn Metal Fabricators,* 146 Misc.2d 414, 550 N.Y.S.2d 811 (1990), a case involving an action brought against a nonmilitary government contractor who manufactured postal carts for the Postal Service, the court held that policy considerations present in *Boyle,* namely the selection of an appropriate design for military equipment to be used by the Armed Forces, and the balancing of technical, military and social considerations, including the trade-off between greater safety and greater contract effectiveness, were not present in a case involving civilian equipment. *Id.,* 550 N.Y.S.2d at 812. Accordingly, the court held that the defense should not be expanded to shield all nonmilitary government contractors from liability. *Id.*

Limiting the use of the defense to the military context is also in accord with the Second Circuit's decision in *In re Joint Eastern & Southern Dist. New York Asbestos Lit.,* 897 F.2d 626 (2nd Cir.1990) (the *"Grispo"* case). Although the *Grispo* case does not explicitly address the issue of whether the government contractor defense extends to situations involving non-military equipment,[15] the Court makes clear its preference that the defense be confined to actions involving the design of military equipment. First, the *Grispo* Court referred to the common law defense outlined in *Boyle* as a "military contractor defense," using that term exclusively in its

opinion. *Id.* at 627, 628, 629, 630, 631, 632, 633, 634. Second, in its analysis of the *Boyle* decision, the *Grispo* Court plainly found that the military context at issue in the *Boyle* case formed an integral part of the rule of conditional immunity for government contractors. Specifically, the Second Circuit stated as follows: "the Supreme Court recognized a federal common law defense for military contractors which, in certain instances, displaces duties imposed pursuant to state tort law," *id.* at 627; the Supreme Court reasoned that "the 'uniquely federal' interest in regulating the liability of military contractors working for the Government warranted granting military contractors a federal common law defense displacing state tort law duties," *id.* at 628; the Supreme Court "considered the Government's selection of design of military equipment a paradigmatic policy decision that the discretionary function exception shields from ... judicial 'second-guessing,'" *id.;* and "[w]ithout a congruent defense for military contractors acting pursuant to government design specifications ... the discretionary function exception would lose much of its force." *Id.*

Based on the foregoing, the Court finds that the defense set forth in *Boyle* is to be limited to the military context.[16] Since the case at hand involves civilians injured by a product designed to further civilian, rather than military objectives, there is no reason to hold that application of state law would create a "significant conflict" with federal policy requiring a displacement of state tort law. Accordingly, Appellees cannot rely on the military contractor defense to shield them from liability, and the Bankruptcy Court's October 21, 1991 Opinion,

---

**15.** The case instead involves whether *Boyle* bars a state law failure-to-warn action seeking recovery for injuries alleged to have occurred from exposure to asbestos-based cement used at the Brooklyn Navy Yard during World War II.

**16.** Justice Brennan's dissent in *Boyle* does not warrant a different result. In his dissent, Justice Brennan indicated that his reading of the Court's majority opinion extended the government contractor defense "to any made-to-order gadget that the Federal Government might purchase after previewing plans—from NASA's

Challenger space shuttle to the Postal Service's old mail cars." *Boyle,* 487 U.S. at 516, 108 S.Ct. at 2520 (Brennan, J., dissenting). However, there is no support for such an expansive reading of the defense in the majority opinion. As stated above, the Court's majority opinion supports a finding that the defense is to be limited to the military context. Moreover, the fact that the majority did not comment on Justice Brennan's reading of the defense does not signify that the majority implicitly adopted Justice Brennan's expansive notion of the defense.

granting Appellees' motion for summary judgment disallowing Appellants' defective design and failure-to-warn claims on the basis of the government contractor defense, is reversed. Because of that determination, there is no need for the Court to address the question of whether the three conditions of the *Boyle* test were satisfied in the instant case.[17]

### Conclusion

For the reasons set forth above, the Bankruptcy Court's determination that it had subject matter jurisdiction to make a threshold determination regarding the allowance or disallowance of (1) personal injury tort or wrongful death claims which may have been asserted against an inappropriate (wrong) defendant or Debtor and (2) personal injury tort or wrongful death claims because they may be barred, as a matter of law, by the government contractor defense established in *Boyle*, is affirmed. The Bankruptcy Court's decision granting summary judgment to the Appellees disallowing Appellants' claims on the basis of the government contractor defense, is reversed. As a result, this action is remanded to the Bankruptcy Court for a determination of the question of successor liability.

SO ORDERED.

---

**17.** There is, however, one remaining issue, namely the issue of successor liability. In its March 7, 1990 Opinion, the Bankruptcy Court concluded that it had jurisdiction to determine the threshold issue of whether or not the LTV and LTVAD assertions in the Objection that the claims against them must be disallowed because they had no involvement in the design, manufacture, or sale of Postal Dispatchers, are valid. 111 B.R. at 67. The Bankruptcy Court did not consider this issue in its October 21, 1991 Opinion because it found the government contractor defense dispositive. As this Court has found that the government contractor defense does not apply to the instant case, a decision must be reached on the issue of successor liability before this Court can determine if a trial is necessary and, if so, in which court the trial should proceed. *See* 28 U.S.C. § 157(b)(5). Accordingly, the Court remands this case to the Bankruptcy Court for a decision on the issue of successor liability.